490 P.2d 1177

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Appellant,**

v.

**TRANSPORT INDEMNITY COMPANY, a California corporation, Appellee.**

**No. 1 CA–CIV 1504.**

Court of Appeals of Arizona, Division 1, Department B.

Nov. 22, 1971.

Rehearing Denied Dec. 27, 1971.

Review Granted Jan. 25, 1972.

Lewis & Roca, by John P. Frank, Phoenix, for appellant.

Snell & Wilmer, by H. William Fox, Phoenix, for appellee.

JACOBSON, Presiding Judge.

This appeal requires the Court to determine whether or not a negligent business owner was a "user" of a pickup truck within the terms of an omnibus clause of an automobile insurance policy, when he was in the process of loading the same with liquid petroleum gas.

On October 19, 1965, R. L. Cook and Lawrence Hall loaded an empty 80 gallon LP gas tank onto a 1957 Dodge pickup owned by James Hedrick. The pickup was then driven to the location of a retail LP gas business owned by Ernest Richter for the purpose of filling the 80 gallon tank. Both the use of the pickup and the transportation of the tank for purposes of filling it were done with the express permission of the pickup owner, Mr. Hedrick.

At the retail LP gas outlet, Cook attached the storage tank filler hoses to the 80-gallon tank on the pickup. Richter then opened the storage tank valve and the 80-gallon tank was filled. After the filling operation was completed, Cook notified Richter who turned off the storage tank valve and Cook proceeded to remove the filler hoses from the 80-gallon tank. When he had removed the second filler

**50**

hose, a large quantity of gas began to escape from a fitting located on the 80-gallon tank, apparently resulting from a defective shutoff valve. This escaping gas was ignited by the flame of a nearby hot water heater resulting in a fire which burned Cook, Richter, and a bystander, Samuel M. McAnally. The above facts were stipulated to by the parties together with the stipulation that Richter was negligent in not inspecting the 80-gallon tank prior to filling and in maintaining an open-flame gas heater in close proximity to the gas filling operation.

At the time of the accident, Richter, the LP gas distributor, was insured by appellee-plaintiff, Transport Indemnity Co. (Transport) against liability for personal injuries arising out of the use and operation of the LP distributorship. Also, at this time, Hedrick, the owner of the pickup, was insured by appellant-defendant, State Farm Mutual Automobile Insurance Co. (State Farm). The State Farm policy defined risks insured against as follows:

"Bodily injury sustained by other persons * * * caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned automobile."

The policy further covered as insureds, the following:

"Any person while using the owned automobile * * * provided the actual use is by the named insured or such spouse, or with the permission of either."

Following the accident both Cook and the bystander, McAnally brought suit against Richter for their personal injuries. This action was defended by Transport after State Farm had refused a tender of the defense. Transport subsequently settled the Cook-McAnally litigation and then brought the instant litigation against State

Farm contending that State Farm was the primary insurer of Richter and thus primarily liable under its policy for the sums expended in settlement.

The matter was submitted to the Court upon the stipulated facts previously set forth and Transport's motion for summary judgment. The trial court entered summary judgment in favor of Transport for the full limits of the State Farm policy, together with costs of the defense of the Cook-McAnally litigation. This appeal followed.

Transport's initial thrust, both before the trial court and here, is that Richter, while engaged in the loading of the LP gas, was a permissive user of the pickup truck and therefore an "insured" under the State Farm policy, thus entitling Richter to its protection.[1]

Since we are of the opinion that the resolution of this litigation rests on determining who is an insured under the State Farm policy rather than on the extent of coverage, we need not determine whether Arizona should adopt the "coming to rest" doctrine or "complete operation" doctrine in interpreting the extent of coverage afforded under a "loading or unloading" clause of an insurance policy. For a discussion of this subject see the annotation Liability Policy—Loading and Unloading at 160 A.L.R. 1259.

Transport's reasoning that Richter is an insured of State Farm is based upon the argument that the word "using" as employed in the clause defining insureds, includes any person *"using"* the vehicle with permission of the named insured. Therefore, the argument continues, anyone engaged in "loading and unloading" under the coverage clause is "using" the vehicle and thereby becomes an insured under the policy insuring the automobile.

1. Transport's policy contained an "excess clause" making all "other insurance" available primary. State Farm's policy provided that other insurance which covered the loss would be apportioned on the basis of policy limits. Under the decision in Rocky Mountain Fire and Casualty Co. v. Allstate Insurance Co., 107 Ariz. 227, 485 P.2d 552 (1971), if Richter was an insured under the State Farm policy, that policy would stand the brunt of primary liability.

In this case there can be no serious argument that Richter was, in the broad sense of the word of the policy, engaged in "loading and unloading" the pickup at the time of the accident. However, is the term "loading and unloading" as used in the coverage portion of the policy, included in the word "use" when employed in defining insureds under the policy?

Historically, Courts have held that the term "use" as employed in an automobile insurance policy has a different and distinct connotation from the words "loading and unloading" as used in the same policy. Thus, the Supreme Court of Utah, in the landmark case of Pacific Automobile Ins. Co. v. Commercial Cas. Ins. Co., 108 Utah 500, 161 P.2d 423, 160 A.L.R. 1251 (1945) [2] stated:

> "Practically all authorities are agreed that in such insurance contracts the phrase 'including loading and unloading' is a phrase of extension. It expands the expression 'the use of the truck' somewhat beyond its connotation otherwise so as to bring within the policy some acts in which the truck does not itself play any part. It deals with a period when the truck itself is at rest, but the goods are being moved onto or off the truck." 161 P.2d at 424.

*Also see*, American Oil & Supply Co. v. United States Casualty Co., 19 N.J.Misc. 7, 18 A.2d 257 (1940) and Stammer v. Kitzmiller, 226 Wis. 348, 276 N.W. 629 (1937).

Under this historical concept of the words "use" and "loading and unloading" it can be logically argued that while the phrase "including loading and unloading" expands the *coverage* afforded under the policy to persons who are admittedly insureds, it does not expand the class of persons who are insureds under the policy while "using" the vehicle. Thus, logically, although the definition of "insured" under the policy would include persons "using" the vehicle on the highway, or employing the vehicle in service involving supervisory control or guidance of its movement, (*See*, Woodrich Construction Co. v. Indemnity Ins. Co., 252 Minn. 86, 89 N.W.2d 412 (1958)) it would not include persons who were engaged in loading or unloading the vehicle—activities involving the vehicle, but separate and apart from its function as transportation. Under this theory, the Court should have no difficulty in holding that a permissive driver while himself engaged in loading and unloading the vehicle remains an insured under the policy for he is so defined under the policy and coverage is extended while he uses the vehicle for loading and unloading. On the other hand, under this theory, persons who have no relation to the actual use of the vehicle on the highway, either as a driver, passenger, or controller of its movements, but are engaged merely in the loading or unloading function could not be classified as insureds because they do not fall within the limited definition of "using" the vehicle.

There is, however, respectable authority [3] which holds that the bare term "use" would cover loading and unloading operations. See, Luchte v. State Automobile Mut. Ins. Co., 50 Ohio App. 5, 197 N.E. 421 (1935); Panhandle Steel Products Co. v. Fidelity Union Cas. Co., 23 S.W.2d 799 (Tex.Civ.App.1929). As was stated in International Business Mach. Corp. v. Truck Ins. Exch., 2 Cal.3d, 1026, 89 Cal. Rptr. 615, 474 P.2d 431 (1970):

> " * * * [W]e discern no difference in scope between policies which express-

2. This case first used the terms "coming to rest doctrine" and "complete operation doctrine" in defining the two theories employed by courts in extending coverage under the "loading and unloading" clause of automobile policies.

3. *See*, Brown and Rijord, Loading and Unloading: The Conflict Between Fortuitous Adversaries, 29 Insurance Counsel Journal 197 (1962). Both Judge Brown, Circuit Judge of the U. S. Court of Appeals for the 5th Circuit and Mr. Rijord, General Counsel of the Employers' Reinsurance Corporation, assume without discussion that any person engaged in loading and unloading is "using" the vehicle and therefore is an omnibus insured.

ly include 'loading and unloading' and those which refer to 'use' of the vehicle. Although some cases have stated that a 'loading and unloading' clause is 'an extension, rather than a limitation, on the meaning of the term "use of an automobile" ', (cases cited), the practical effect of the different clauses is negligible under the California authorities; no case presents or suggests any factual setting in which the difference in wording could affect the legal result." 474 P.2d at 433.

From our analysis of the conflicting results reached in this type of litigation, we are convinced that the historical approach to this problem, that is, that the words "loading and unloading" as employed in coverage situations have a different meaning than the word "use" in defining insured, stands on the firmer legal footing. We reach this result for several reasons.

■■■ First, a general rule of construction provides that an insurance contract must be read as a whole and each and every provision thereof must be given effect. Droz v. Paul Revere Life Insurance Co., 1 Ariz.App. 581, 405 P.2d 833 (1965). The fallacy in treating the word "use", as embracing, without more, the operation of loading and unloading is to treat the phrase "loading and unloading", as surplusage. From the wording of the coverage clause, it is obvious that the drafters of the insurance contract intended that this phrase be given a meaning separate and apart from the general term "use". In the absence of statutory provisions which may override the express language of the policy, courts are not at liberty to disregard the clear and plain language of the insurance contract. D.M.A.F.B. Federal Credit Union v. Employers Mutual Liability Insurance Co. of Wis., 96 Ariz. 399, 396 P.2d 20 (1964). If then, we take the policy as

written, and give the words "including loading and unloading" their normally accepted meaning, the conclusion is inescapable that this phrase modifies and expands the normal and ordinary understanding of the word "use" when applied to an automobile, that is, driving it. While judicial decisions have expanded this normal and ordinary connotation of the word "use" of an automobile to include passengers,[4] work crews,[5] and even persons in supervisory control of the vehicle,[6] the failure to include the words "including loading and unloading" when defining "insured persons" must be taken at least as an indication that the word "using" should be limited to persons other than those engaged in loading and unloading.

Second, we believe a valid and logical argument can be made that the intent of the policy is to limit insureds to persons not engaged in loading and unloading when consideration is given to the purpose of automobile insurance, and especially of the omnibus clauses required by our Financial Responsibility laws. As stated in Schecter v. Killingsworth, 93 Ariz. 273, 380 P.2d 136 (1963) the primary purpose of the financial responsibility laws is "the providing of security against uncompensated damages arising from operation of motor vehicles on our highways." Admittedly, this purpose was arrived at in an opinion which upheld the constitutionality of Arizona's Financial Responsibility Laws, but it points up why the average layman buys insurance and why the insurance company issues a policy—to provide protection against liability arising out of the *operational* use of the vehicle. Can it seriously be contended that, when Mr. Automobile Owner buys a policy of insurance covering his automobile and the permissive user thereof, either he or the company issuing the poli-

---

4. Brown v. Kennedy, 141 Ohio St. 457, 48 N.E.2d 857 (1943).

5. Wagman v. American Fidelity and Casualty Co., 304 N.Y. 490, 109 N.E.2d 592 (1952).

6. Woodrich Construction Co. v. Indemnity Co., 89 N.W.2d 412 (1958), *supra.*

cy intends to cover as an omnibus insured the carry out boy of the local supermarket who negligently runs the shopping cart over the foot of a bystander while helping the "missus" carry her groceries to the family automobile?[7] We think not. Therefore, under the so-called "cardinal rule of construction"—ascertaining and effectuating the intent of the parties—the extension of insureds under the policy is not justified.

◼ Third, for strong reasons of public policy the term insured under the automobile liability policy should not be extended to cover the negligence of third persons who are in essence strangers to the policy and to the operational use of the vehicle and whose only contact with it is limited to the loading or unloading situation. Our research has revealed that almost all the cases dealing with this type of litigation involved disputes between two insurance companies, as is the case here. If we hold that a negligent loader or unloader is an insured under the automobile liability policy, the effect may well be to transfer a portion or all of the ultimate liability from the insurer of the negligent party to the insurer of the innocent party. Such a holding not only enables the loader or unloader to secure a disproportionately lower insurance liability rate for his business, it may also ultimately discourage such an individual from exercising due care in the selection of his employees and the maintenance of his premises. *See*, International Business Machine Corp. v. Truck Insurance Exchange, *supra*.

Our research has revealed only one jurisdiction which has employed the reasoning set out above to reach the conclusion that the negligent loader or unloader is not an insured under the automobile liability policy. This was in Buckeye Union Cas. Co. v. Illinois National Ins. Co., 2 Ohio St.2d 59, 206 N.E.2d 209 (1965), where the Court stated:

"This enlargement of the meaning of the word 'use' for the purposes stated [coverage afforded under the policy] does not enlarge the meaning for the purpose of defining an insured in the * * * policy * * *." 206 N.E.2d at 211.

The Kentucky Court of Appeals has cited this Ohio decision favorably in arriving at the conclusion that an owner and operator of a water tank, while engaged in loading and unloading a truck with water, was not an insured under the truck's liability policy. Kentucky Water Service Co. v. Selective Ins. Co., Ky., 406 S.W.2d 385 (1966).

There are numerous cases which arrive at the same result, not on the reasoning employed here, but rather upon a determination of whether the tort charged was an act or omission in the loading or unloading process, in which case, the automobile insurer would bear liability, or in the maintenance of the loading or unloading premises, in which case the premises insurer would be liable. (For the conflicting results reached by the use of this test, see the cases collected and cited in Atlantic Mutual Insurance Co. v. Richards, 100 N.J.Super. 180, 241 A.2d 468 (1968).)

Needless to say, we reject this approach to the problem as failing to fully explore and define those persons who are "insured" under the policy. As we have previously indicated, this court considers the problem to be one of defining insureds and not one of defining coverage.

For the foregoing reasons the judgment of the trial court is reversed with directions to the trial court to dismiss Transport's complaint for failure to state a claim.

HAIRE and EUBANK, JJ., concur.

---

7. We are assuming for the purposes of this illustration that the "missus" was not herself negligent in directing the loading operation.