505 P.2d 227

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation, Appellant,**

v.

**TRANSPORT INDEMNITY COMPANY, a California corporation, Appellee.**

**No. 10739–PR.**

Supreme Court of Arizona,
In Banc.

Jan. 19, 1973.

Lewis & Roca, by John P. Frank and Michael J. LaVelle, Phoenix, for appellant.

Snell & Wilmer, by H. William Fox, Phoenix, for appellee.

HAYS, Chief Justice.

This case is before us on a petition to review a decision of the Court of Appeals reported at 16 Ariz.App. 49, 490 P.2d 1177, reversing a judgment of the Superior Court. The decision of the Court of Appeals is vacated and the judgment of the Superior Court is affirmed.

In the Superior Court the case was submitted on a stipulation of facts, followed by a motion for summary judgment which was granted. The stipulation established the following facts:

On October 19, 1965, Ernest Richter was retailing liquified petroleum gas (hereinafter referred to as "gas") in Tucson, and was insured against liability for personal injuries on his business premises by Transport Indemnity Company (Transport), the plaintiff below in this action. This policy contained a single limit of $10,000,000. State Farm Mutual Automobile Insurance Company (State Farm) insured a Dodge pickup belonging to James Hedrick. Mr. Hedrick, together with R. L. Cook and Lawrence Hall, was engaged in a common business enterprise under the name of Southwestern Silver Corporation (Southwestern). Southwestern purchased an eighty-gallon tank, equipped with valves, to be used to store and transport gas, and loaded the tank on the pickup which, with Hedrick's express permission, was then driven to Richter's. Cook and Hall accompanied the truck to the premises of Richter, who directed them where to park the vehicle. At Richter's direction, Cook climbed on to the bed of the truck and attached the filler hoses from Richter's storage tank to the tank on the truck. Richter then opened his valves, filled the tank on the truck, and closed his valves. Richter then told Cook to shut off the tank's valves and disconnect the hoses. Due to a defective shutoff valve on the tank, the removal of the hose allowed a large quantity of gas to escape and become ignited by Richter's nearby heater. The resulting fire badly burned Cook, Richter, and a bystander named Samuel M. McAnally. Richter was negligent in directing the filling so near to a lighted heater, and in failing to inspect the valves on the tank to be filled, before the operation commenced. Neither Hall nor Cook was familiar with the filling operation or knew of the presence of the heater. Cook and McAnally sued Richter, who turned over the defense to Transport. The latter tendered the defense to State Farm on the theory that State Farm's policy was primary. State Farm refused to have anything to do with the case. Transport compromised the two personal injury claims for a total of $37,500, an amount which was reasonable. Transport also incurred attorneys' fees and expenses, of $2,346.43, about half of which should be allotted to each injury settled. Both policies are a part of the record.

Since the facts are undisputed, summary judgment was a proper method of disposing of the case. The trial court awarded judgment to Transport against State Farm for $20,000 (State Farm's policy limit) and for $1,251.43 out of the $2,346.43 fees and expenses claimed, plus interest and costs. The Court of Appeals reversed and remanded with directions to dismiss the complaint.

The injured parties have been recompensed, and this action is merely to determine which insurance carrier shall bear the loss or, if both, in what proportions.

The following provisions of the State Farm policy are pertinent:

". . . To pay all damages which the insured shall become legally obligated to pay because of bodily injuries sustained by other persons . . . caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned automobile."

\*　\*　\*　\*　\*　\*

". . . the unqualified use of the word 'insured' includes the named insured . . . and also includes any person while using the owned automobile . .

provided the actual use is . . . with . . . permission . . ."

\* \* \* \* \* \*

"This policy does not apply . . . to bodily injury to the insured . . ."

■ State Farm in its brief before the Court of Appeals, argues only two questions. Its first question is: Was the accident causally related to "the ownership, maintenance, or use, including loading or unloading" of the insured truck?

It argues that Richter's negligence was not in the loading of the truck and that the truck was merely the situs of the accident. It states that the law is that the use of the truck must be causally related to the accident. For this position it cites Brenner v. Aetna Ins. Co., 8 Ariz.App. 272, 445 P.2d 474. In that case, a passenger in a moving automobile, carelessly playing with his gun, shot and injured another passenger in the same car. The discharge of the weapon was concededly not caused by the jerks or bumps of the car. The Court of Appeals held, as State Farm now wishes us to hold in the instant case, that the lack of causal connection between the auto and the accident was fatal to the plaintiff's action. We have no fault to find with that case, but the facts are inapplicable to the case at bar, because there the accident did not arise out of the loading or unloading of the car. When the problem came before us in Morari v. Atlantic Mut. Fire Ins. Co., 105 Ariz. 537, 468 P.2d 564, one passenger shot another passenger *while attempting to unload his gun from the vehicle.* We rejected the argument which State Farm is now urging and said:

"We think appellant is shifting the meaning of the word 'cause.' The unloading does not have to be the cause in the sense of proximate cause of the accident. The accident need only be connected with the unloading. . . . Morari relies on two cases . . . Brenner [supra] . . . We think they are distinguishable." 468 P.2d at 566–567.

The citation of other cases by State Farm merely proves that all states do not interpret the policies the same way. Since we have clearly spoken on the matter, no useful purpose would be served by a discussion of cases from other jurisdictions. There are many supporting our view; some of them are cited in *Morari, supra.*

■ State Farm poses a second question: Did State Farm's policy exclude the bodily injury claims of permissive users when it excluded claims for bodily injury to those designated as insureds, and defined "insureds" to include permissive users?

State Farm argues that the definitions and exclusions in the policy eliminate the claim of Cook, who was an omnibus insured engaged in using (loading) the truck, with the named insured's consent. This argument, likewise, is contrary to our decisions. In Jenkins v. Mayflower, 93 Ariz. 287, 380 P.2d 145, we made it clear that restrictions in the omnibus clause were against the public policy of this state and would be considered void. *Mayflower* has been repeatedly cited with approval and is now an integral part of our motor vehicle insurance law. The public policy behind that case and its progeny is that people should not be injured by the operation of motor vehicles and be left uncompensated because of the particular wording of the policy insuring the car that caused the injury, thus making the injured parties public charges.

The *Mayflower* and succeeding cases applied this public policy to make sure that the operator of the vehicle was not excluded by lack of, or restrictions on, the omnibus clause. The same result can be written into a policy of auto liability by excluding various persons *from the benefits* of the policy. For example, *Mayflower* held that a provision excluding coverage on omnibus insureds who were members of the armed forces was invalid. But the company could write into the policy, instead, that if the injured person was a member of the armed forces, he could not recover under the policy. There can be no doubt that such a provision would be equally contra to the State's public policy.

The only exception we have so far permitted is that which was involved in the case of New York Underwriters v. Superior Court, 104 Ariz. 544, 456 P.2d 914. There, we permitted an automobile owner to contract with his insurance carrier that injuries by him and his family would be excluded from the policy benefits. This seemed only fair, since the exclusion was clearly expressed, voluntary, and resulted in a lower premium for the buyer of the policy. We have recently decided two cases: New York Underwriters v. Spiller, 109 Ariz. 31, 504 P.2d 932 (decided on January 5, 1973) and Farmers Insurance Group v. Home Indemnity, 108 Ariz. 126, 493 P.2d 909. In each of them we have refused to construe the word "insured" in the policy as including both the named insured and the omnibus insured, and have instead indicated that the word "insured" means the omnibus insured if he is the tort-feasor; *i. e.,* if he is the one at fault and against whom the action is brought. In the instant case, while Cook is an omnibus insured, he is not the tort-feasor—Richter is the one on whom the stipulation of facts places the sole negligence causing the accident. We therefore hold that neither Cook nor the bystander, McAnally, are excluded from participating in the benefits of the State Farm policy in the instant case. Another reason for not excluding Cook is that he made no contract with State Farm and received no reduced premium. If we permitted such an exclusion, there is no limit to the number of people who could be excluded. As a practical matter, every person in the state, by merely taking the wheel of the truck with permission, would be excluded by the policy's wording if we were to accept State Farm's argument.

While this disposes of the issues raised by State Farm, it mentions in a footnote to its brief that its policy provides that other policies covering the loss shall share the loss with it in proportion to their respective policy limits. This question, we have also decided. *See* Dairyland Mut. Ins. Co. v. Andersen, 102 Ariz. 515, 433 P.2d 963. State Farm recognizes this case, calls it

"unjust," and "expressly reserves the issue for such further appeal as may be appropriate." We have cited *Dairyland* with approval on many occasions and it represents the great weight of authority. We have no inclination to overrule it.

The opinion and decision of the Court of Appeals is vacated, and the judgment of the Superior Court is affirmed.

CAMERON, V. C. J., and LOCKWOOD, and HOLOHAN, JJ., concur.

Note: Justice STRUCKMEYER did not participate in the determination of this matter.