**TRANSAMERICA INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Michael HENRY, b/n/f Clifford HENRY & Elizabeth Henry, Clifford Henry, Elizabeth Henry, Michael Henry, Amy S. Anderson, Karen Anderson, State Farm Insurance Company, Wessin & Gorman Trucking, and Bryan M. Gorski, Defendants–Appellants.**

**No. 71S00–9006–CQ–416.**

Supreme Court of Indiana.

Dec. 12, 1990.

James F. Groves, Hardig, Lee & Groves, Joseph M. Forte, Edward N. Kalamaros & Associates, South Bend, for defendants-appellants.

William J. Reinke, Mark D. Boveri, Barnes & Thornburg, South Bend, for plaintiff-appellee.

Robert B. Clemens, Gregory A. Castanias, Ice Miller Donadio & Ryan, Indianapolis, for the Insurance Institute of Indiana, amicus curiae.

SHEPARD, Chief Justice.

The United States Court of Appeals for the Seventh Circuit has certified to us questions concerning Indiana law. Ind. Appellate Rule 15(O). The Seventh Circuit requests answers to the following two questions:

1. Do Ind. Code § 9-1-4-3.5 and other provisions in the Indiana Code concerning automobile financial responsibility render Indiana a "compulsory insurance" state and evince a social policy to guarantee compensation for all victims of automobile accidents?

2. Is a household exclusion clause in an automobile liability insurance policy contrary to the public policy of Indiana, as expressed in statute or case law, particularly Ind.Code § 9-1-4-3.5, when applied to preclude coverage for injuries sustained by a resident of the named insured's household?

*Transamerica Insurance Co. v. Michael Henry*, 904 F.2d 387, 391 (7th Cir.1990). These two queries are part of the single question which confronted the district court: Does "the household exclusion clause in the Transamerica insurance policy issued to the Henrys contravene[ ] the stated public policy of the state of Indiana." *Id.* at 390. We hold it does not.

Clifford and Elizabeth Henry held a Transamerica automobile insurance policy effective March 17 through September 17, 1987. The policy contained an exclusionary clause which provided: "EXCLUSIONS: We do not provide liability coverage . . . for bodily injury to any person who is related by blood, marriage or adoption to you, if that person resides in your household at the time of the loss." *Id.* at 389.

With the Henrys' permission, on August 5, 1987, Amy Anderson drove a car insured under this policy. Michael Henry, who resided with his parents, was a passenger in the car. Anderson and Michael collided with a truck, and Michael suffered serious personal injuries. Michael's parents filed suit to recover for his injuries. They sued the owner of the truck, the operator of the truck, and Amy Anderson.

Anderson's own insurer paid its full policy limits to Michael and was dismissed from the case. Anderson also requested that Transamerica defend her in the suit and that it pay any settlement or judgment arising from the suit, asserting that she was covered under the Henrys' policy. Transamerica refused, and filed suit in federal district court seeking a declaratory judgment that it was not obligated to defend or indemnify Anderson on the Henrys' claim.

The defendants contend that the household exclusion clause violates the public policy of the state of Indiana as evidenced in Ind.Code § 9–1–4–3.5 (West Supp.1990) and thus is invalid. *Id.* at 388–389. In response to the Seventh Circuit's request, we determine whether the household exclusion clause violates Indiana public policy after the enactment of § 9–1–4–3.5.

### Question 1: Is Indiana a Compulsory Insurance State?

In *Allstate Insurance Co. v. Boles* (1985), Ind., 481 N.E.2d 1096, 1101, we determined in response to another certified question from the Seventh Circuit that Indiana was not then a compulsory insurance state.[1] The cause of action in *Boles* accrued prior to adoption of the statute now at issue. Under prior law, Indiana required proof of financial responsibility only after the occurrence of an accident. Ind.Code § 9–2–1–4 (Supp.1981).

Because coverage was not required until after the first accident occurred, Indiana courts examining our former law had long ago come "to the inescapable conclusion that our Legislature did not intend the financial responsibility law to be or to become a compulsory insurance statute." *Green v. State Farm Mut. Auto. Ins. Co.* (1976), 168 Ind.App. 434, 439, 343 N.E.2d 828, 831.[2] The purpose of the scheme in place then was only "protecting victims against an owner or operator's second or subsequent accident." *Id.* It permitted most people to register and drive an automobile without first giving proof of insurance or other ability to be financially responsible for damages they might cause to others. Accordingly, Indiana was not a "compulsory insurance state" for two reasons: lack of compulsion to prove responsibility until after an accident and a statute which permitted proof of responsibility after an accident in any of several ways.

■ The enactment of § 9–1–4–3.5 changed the "one free accident" scheme. The statute now requires that:

(a) A motor vehicle may be registered in Indiana only if proof of financial responsibility in the amounts specified in IC 9–2–1–15 is produced for inspection at the time application for registration is made in a form required by the department.

(b) Financial responsibility, in one (1) of the forms prescribed by IC 9–2–1–16 or by self-insurance under IC 9–2–1–37, must be continuously maintained in at least the amounts specified in IC 9–2–1–15 as long as the motor vehicle is operated on roads, streets, or highways in Indiana. A person who operates a motor vehicle on a road, street, or highway in violation of this subsection commits a Class C misdemeanor.

Ind.Code § 9–1–4–3.5. Obviously, this statute requires that proof of financial responsibility must be made before a motor vehicle can be registered in Indiana. *Safeco Ins. Co. of America v. State Farm Mut. Auto. Ins. Co.* (1990), Ind.App., 555 N.E.2d 523; *see also Hitt v. Githens* (1987), Ind.App., 509 N.E.2d 210. The statute also demonstrates that "the legislature intended that there should be no certificate of registration outstanding without concurrent and continuous proof of financial responsibility." *American Underwriters Group v. Williamson* (1986), Ind.App., 496 N.E.2d 807, 810.

■ Indiana's new financial responsibility statute, Ind.Code § 9–1–4–3.5, requires that proof of financial responsibility be (1) made to register a car and (2) be maintained as long as the motor vehicle is operated in Indiana. Unlike under the previous system, *every* car on the road must be covered regardless of whether its drivers

---

1. The first form of § 9–1–4–3.5 was enacted in 1982, three years before *Boles.* 1982 Ind. Acts 799 (Pub.L. No. 83, approved Feb. 25, 1982). *Boles,* however, considered the validity of a household exclusion clause appearing in an insurance policy effective August 10, 1981, through February 10, 1982, and applied to an accident which occurred in 1981.

2. Although the Safety Responsibility, Driver Improvement, and Financial Responsibility Act was amended between *Green* and *Boles, see, e.g.,* 1977 Ind. Acts 583, 587–92 (Pub.L. No. 118, § 3, approved May 4, 1977), the relevant financial responsibility scheme remained intact.

have been in a previous accident. Transamerica's counsel noted at oral argument that the overwhelming majority of Indiana vehicle owners prove financial responsibility by purchasing insurance, although the law still permits proof of responsibility through bond, deposit of funds or securities, and self-insurance.[3] Thus, we think it is probably most accurate to call Indiana a "compulsory financial responsibility" state.[4]

■ Having concluded that Indiana is a compulsory financial responsibility state, we still must ask whether the adoption of § 9–1–4–3.5 "evince[s] a social policy to guarantee compensation for all victims of automobile accidents." We find that it does not.

From the time the General Assembly enacted financial responsibility laws, the other two branches of Indiana government have regarded these statutes as "predicated upon a state policy to facilitate recovery for loss suffered because of the negligent operation of motor vehicles *by others.*" 1944 Op. Att'y Gen. 22 (emphasis added); *Boles,* 481 N.E.2d at 1102 (DeBruler, J., dissenting). Justice Pivarnik's opinion for this Court in *Boles* reaffirmed this conclusion, saying:

> Clearly, the purpose of the [Safety–Responsibility and Driver Improvement] Act is not to require an automobile owner to be insured for personal injury sustained by himself, rather it is to require insurance for liability for injuries sustained by *others* .... [T]he Act only requires liability insurance for injuries sustained by persons *other than the insured* ....

481 N.E.2d at 1101 (emphasis added); *cf. Safeco,* 555 N.E.2d at 524 ("the legislature did not intend to require that all owners' policies would necessarily provide protection to any person operating a vehicle with the owner's consent.").

Indiana's current financial responsibility scheme, like the prior one, demonstrates a policy to protect automobile owners, their families, friends, and guests from damages which might be inflicted on them by other cars out on the road. *See Gelco Vehicle Leasing, Inc. v. Boston* (1989), Ind.App., 539 N.E.2d 979, 981 ("Although the Act has been modified to require insurance for all registered vehicles, [the *Boles* ] interpretation remains persuasive."). One who owns a car has the opportunity to buy protection for himself, his family, and friends whom he permits in his vehicle. The owner has no control, of course, over the acts of other motorists. The purpose of our financial responsibility statute is to compel those other motorists to make provisions for our protection.

Indiana's motor vehicle scheme, even with the amendment of § 9–1–4–3.5, is designed only to protect motorists from drivers *other* than themselves. It is not designed to protect owners (and their families and friends) from themselves. Therefore, Ind.Code § 9–1–4–3.5 does not constitute a social policy to guarantee compensation to all victims of motor vehicle accidents.

### Question 2: Is a Household Exclusion Clause Contrary to Indiana Public Policy?

■ *Boles* made clear that, prior to the enactment of § 9–1–4–3.5, a household exclusion clause in an automobile insurance policy was not contrary to the public policy of Indiana. We stated there:

> We fail to see in what sense the household exclusion clause contravenes public policy implicit in Ind.Code § 9–2–1–1 et seq., when the Act only requires liability insurance for injuries sustained by persons other than the insured and when the Act does not mandate insurance be the means of proving financial responsibility.

481 N.E.2d at 1101.

Since at least 1977, our courts have made clear that household exclusion clauses will be read to be consistent with the public

---

**3.** *See* Ind.Code § 9–1–4–3.5; Ind.Code § 9–2–1–16 (West Supp.1990); Ind.Code § 9–2–1–37 (West 1979).

**4.** *Cf. Williamson,* 496 N.E.2d at 809 n. 2; *Safeco,* 555 N.E.2d at 524; *Boles,* 481 N.E.2d at 1101; *Milwaukee Mutual Insurance Co. v. Butler,* 615 F.Supp. 491, 495 (S.D.Ind.1985).

policy of Indiana. *See, e.g., United Farm Bureau Mut. Ins. Co. v. Hanley* (1977), 172 Ind.App. 329, 360 N.E.2d 247; *Boles,* 481 N.E.2d at 1101. *Hanley* expressly invited the legislature to make clear any intentions to the contrary by explicitly nullifying household exclusion clauses. 172 Ind.App. at 341; 360 N.E.2d at 254. Thirteen years later, after *Boles* and after at least four revisions of § 9–1–4–3.5, the legislature still has in no way expressed any intent to void household exclusion clauses.

As we noted above, the principle effect of § 9–1–4–3.5 has been to reduce drastically the possibility of uncompensated first accidents by drivers. Indiana is now a compulsory financial responsibility state such that drivers and their families are protected financially from the damage which can be inflicted on them by other motorists. While § 9–1–4–3.5 represented a considerable improvement in the implementation of this policy, we see little to suggest that the legislature desired to compel parents, for example, to buy liability insurance to cover damage actions brought by their own children.

The decision in *Boles,* therefore, remains dispositive in its assertion that household exclusion clauses comport with Indiana public policy. Because the exclusion clause does not contravene public policy, courts should respect the validity of the agreement between the parties and give effect to the exclusion. *Gelco,* 539 N.E.2d at 981; *Boles,* 481 N.E.2d at 1101.

In short, though Indiana is now a compulsory financial responsibility state, household exclusion clauses do not violate the policy of the state.

GIVAN and PIVARNIK, JJ., concur.

DeBRULER and DICKSON, JJ., dissent without opinion.