Katherine SEGAL, Appellant,

v.

SOUTHERN COUNTY MUTUAL
INSURANCE COMPANY,
Appellee.

No. 05–91–00625–CV.

Court of Appeals of Texas,
Dallas.

May 14, 1992.

Rehearing Denied June 26, 1992.

Richard L. Arnold, Dallas, for appellant.

David N. Kitner, Mark M. Donheiser, Dallas, for appellee.

Before STEWART, CHAPMAN and KAPLAN, JJ.

## OPINION

STEWART, Justice.

The controlling issue before this Court is the validity of that portion of the "family member exclusion" in a standard form Texas Personal Auto Policy that is applicable to an unemancipated minor child who is a resident of the named insured's household. Southern County Mutual Insurance Company sought a declaratory judgment, contending that the family member exclusion relieved it of any duty to defend Katherine Segal on a contribution claim in a lawsuit brought on behalf of her minor daughter. Segal appeals from a summary judgment granted in favor of Southern. On appeal, Segal argues that the family member exclusion is void because it is in conflict with the Texas Safety Responsibility Law and is against the public policy of this state. Segal also complains that the trial court erred in denying her claim for attorney's fees. For the reasons given below, we reverse and render in part and reverse and remand in part.

## BACKGROUND FACTS

On May 7, 1989, Segal was involved in an automobile accident. Both she and her minor daughter suffered personal injuries. Segal was driving a vehicle that she owned. She was the named insured under a standard personal automobile liability policy written by Southern. On April 30, 1990, Segal, individually and as natural guardian of her daughter, filed suit against the drivers of the two other vehicles involved in the accident and against the manufacturer of the car seat occupied by her daughter at the time of the accident. On June 14, 1990, one of the defendants in the underlying cause filed a counterclaim against Segal for contribution. Segal requested Southern to provide a defense to this counterclaim, and Southern did so under a reservation of rights.

Southern then filed this declaratory judgment action and a motion for summary judgment. Segal filed a counterclaim and a motion for partial summary judgment. The trial court granted Southern's motion, denied Segal's motion, and entered a judgment declaring that Southern had no duty to defend Segal in the underlying action. Segal appeals that judgment.

## STANDARD OF REVIEW

Either party may move for summary judgment under rule 166a of the Texas Rules of Civil Procedure. When both parties move for summary judgment, each party must carry its own burden, and neither can prevail because of the failure of the other to discharge its burden. *Vest v. Gulf Ins. Co.*, 809 S.W.2d 531, 532 (Tex. App.—Dallas 1991, writ denied). An order denying a motion for summary judgment is not appealable except, as here, when both parties have filed motions for summary judgment and the court has granted one of the motions and denied the other. *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396, 400 (1959); *Resource Sav. Ass'n v. Neary*, 782 S.W.2d 897, 903 (Tex.App.—Dallas, 1989, writ denied).

The Texas Supreme Court has established the following standards for reviewing a motion for summary judgment:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and

that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■■■ To establish a right to recover as a matter of law, the plaintiff as movant must prove conclusively all elements of its cause of action. *Plano Indep. School Dist. v. Oake,* 682 S.W.2d 359, 364 (Tex. App.—Dallas 1984), *rev'd on other grounds,* 692 S.W.2d 454 (Tex.1985). For the defendant as movant to prevail on a summary judgment, she must either (1) disprove at least one element of the plaintiff's theory of recovery or (2) plead and conclusively establish each essential element of an affirmative defense. *Traylor v. Unitedbank Orange,* 675 S.W.2d 802, 804 (Tex.App.—Beaumont 1984, writ ref'd n.r.e.).

### LEGAL ANALYSIS

Segal first argues that the trial court erred in granting Southern's motion for summary judgment and in denying her partial motion because the family member exclusion conflicts with the Texas Safety Responsibility Law. TEX.REV.CIV.STAT.ANN. art. 6701h (Vernon Supp.1992). Segal contends that she may be held legally liable to pay damages to her minor child for injuries caused by Segal's negligent operation of a motor vehicle. *Jilani v. Jilani,* 767 S.W.2d 671, 673 (Tex.1988) (modified parental immunity and specifically held the parent subject to an automobile tort action brought by unemancipated minor child). Thus, she asserts that the family member exclusion deprives her of coverage for damages that she might become legally obligated to pay,

a result that the statute is intended to prevent.

### Family Member Exclusion

The record reflects that on March 27, 1987, the State Board of Insurance (the Board) prescribed the family member exclusion as an amendatory endorsement designated as 575. This endorsement amended Part A—Liability Coverage of the Texas Personal Auto Policy and became effective on May 1, 1987. State Board of Insurance, 12 Tex.Reg. 1126 (1987) (Texas Automobile Manual). Thus, the endorsement became a standard provision of such policies. *Id.* The family member exclusion amends personal auto liability coverage as follows:

We do not provide Liability Coverage for you or any **family member** for bodily injury to you or any **family member.**[1]

(Emphasis in original.) To determine whether this exclusion conflicts with the Safety Responsibility Law, we examine the language of the statute. *Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984).

### Texas Safety Responsibility Law

■■ Segal argues that the family member exclusion conflicts specifically with section 21(b)(2) of the Texas Safety Responsibility Law. TEX.REV.CIV.STAT.ANN. art. 6701h, § 21(b)(2) (Vernon Supp.1992). First, we note that section 21 of the statute addresses certified or assigned risk policies. The statute requires a person to file with the Texas Department of Public Safety proof of future financial responsibility under certain conditions. *See, e.g.,* TEX. REV.CIV.STAT.ANN. art. 6701h, § 2(d) (Vernon Supp.1992). A certified policy is one means of meeting this requirement. TEX. REV.CIV.STAT.ANN. art. 6701h, § 18 (Vernon Supp.1992). A "motor vehicle liability policy" is defined in section 21(a) as "an owner's or operator's policy of liability insurance, certified as provided in section 19 or section 20 as proof of financial responsibility...." Section 21(b)(2), upon which Segal relies, states:

The policy states that "you" and "your" refers to the "named insured" and to the spouse if a resident of the same household.

---

1. The policy at issue defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."

(b) Such owner's policy of liability insurance:

\* \* \* \* \* \*

2. Shall pay ... all sums which the insured shall become legally obligated to pay as damages arising out of the ownership, maintenance or use of such motor vehicle ...

Southern argued at submission that section 21(b)(2) is inapplicable because Segal's policy was not a certified policy and that, because certified policies present specific, known, unusual risks not associated with most policies, legislative decisions on certified policies do not mandate the same decisions as to all automobile policies. *Ratcliff v. National County Mut. Fire Ins. Co.*, 735 S.W.2d 955, 958 (Tex.App.—Dallas 1987, writ dism'd w.o.j.) (legislature's abolition of policy defenses in section 21(f)(1) as to certified policies does not apply to all automobile policies). Consequently, Southern maintains that Segal cannot rely on the language in section 21(b)(2). We disagree.

■ A certified policy is nothing more than a "policy of liability insurance" that has been properly certified. TEX.REV.CIV. STAT.ANN. art. 6701h, § 21(a) (Vernon 1977). Section 1A(a) of the Safety Responsibility Law sets forth the general requirement for liability insurance as follows:

On and after January 1, 1982, no motor vehicle may be operated in this State unless a policy of automobile liability insurance in at least the minimum amounts to provide evidence of financial responsibility under this Act is in effect to insure against potential losses which may arise out of the operation of that vehicle.

TEX.REV.CIV.STAT.ANN. art. 6701h, § 1A(a) (Vernon Supp.1992). This subsection requires that all persons operating motor vehicles in this State have a policy of automobile liability insurance to provide evidence of financial responsibility to "insure against potential losses" arising from oper-

ation of that vehicle. The statute defines "proof of financial responsibility" as "[p]roof of ability to respond in damages for liability, on account of accidents ... arising out of ownership, maintenance or use of a motor vehicle...." TEX.REV.CIV. STAT.ANN. art. 6701h, § 1(10) (Vernon Supp. 1992). Construing sections 1A(a), 1(10), and 21(b) together, we conclude that they all require the same liability coverage by one means or another, that is, they require a policy of insurance giving owners and operators of nonexempt motor vehicles the ability to respond in damages for all losses resulting from the ownership, maintenance, or use of a motor vehicle. *See Estep v. State Farm Mut. Auto. Ins. Co.*, 103 N.M. 105, 108, 703 P.2d 882, 885 (1985).[2]

Thus, we agree with Segal that the statutory language encompasses the potential liability of a parent to an unemancipated minor child for the negligent operation of a motor vehicle. Further, the supreme court has stated that "[t]here is no question in our minds that the compulsory insurance requirement of the Texas motor vehicle safety law implies that all potential claimants for damages resulting from automobile accidents are intended as beneficiaries of the statutorily required automobile liability coverage." *Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 775 (Tex.1983). Accordingly, we hold that the portion of the family member exclusion applicable to an unemancipated minor child who is a resident of the named insured's household is in conflict with the Act. We sustain Segal's first point of error.

### Public Policy

■ In her second point of error, Segal argues that the family member exclusion violates public policy as expressed in the Texas Safety Responsibility Law and in the

---

**2.** In *National County Mutual Fire Insurance Co. v. Johnson*, 829 S.W.2d 322 (Tex.App.—Austin 1992) (mot. for reh'g pending) (not yet reported), the Austin Court of Appeals held that the family member exclusion contravenes the public policy set forth in the Texas Safety Responsibility Act. That case, which involves a wife's

suit for negligence against her husband, addresses many of the arguments asserted by the parties in our case. However, we have not cited the case as authority because it presently is pending on motion for rehearing in the court of appeals.

Texas Supreme Court's decisions in *Jilani*[3] and *Price*,[4] which permit intrafamily suits in motor vehicle cases. She asserts that, by adopting the family member exclusion in personal auto policies issued in Texas, the Board is substituting its own policy for that of the legislature and the Texas Supreme Court.

Southern contends that the Board's approval of certain policy language in an endorsement is an affirmative holding that the language does not violate public policy. *Dairyland County Mut. Ins. Co. v. Wallgren*, 477 S.W.2d 341, 342 (Tex.Civ.App.— Fort Worth 1972, writ ref'd n.r.e.). Southern also argues that it is the duty of the Board, not the courts, to rewrite or to change policy provisions. *Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278, 281 (Tex.1972). Further, Southern points out that the legislature has not prohibited such an exclusion, although it has the power to do so.

The legislature and the Board determine the public policy of Texas as it relates to automobile insurance coverage. *Boon v. Premier Ins. Co.*, 519 S.W.2d 703, 704 (Tex.Civ.App.—Texarkana 1975, no writ). However, the Board's role is to implement the policy as determined by the legislature. The Board's role is ministerial and not legislative. *Hamaker v. American States Ins.*, 493 S.W.2d 893, 895 (Tex.Civ.App.— Houston [1st Dist.] 1973, writ ref'd n.r.e.). The Board must act consistently with and further express statutory purposes. *American Liberty Ins. Co. v. Ranzau*, 481 S.W.2d 793, 796–97 (Tex.1972). The legislature has expressed its purpose here that every nonexempt motor vehicle be covered by an automobile liability policy that shall pay "all sums which the insured shall become legally obligated to pay...." Tex. Rev.Civ.Stat.Ann. art. 6701h, § 21(b)(2) (Vernon Supp.1992). The Board acted contrary to this express legislative mandate when it approved the family member exclusion because under our facts it excludes sums that an insured parent might become

legally obligated to pay. *Jilani*, 767 S.W.2d at 673.

Segal also relies on *Estep*, 103 N.M. 105, 703 P.2d 882 (1985). There, the court determined that New Mexico's Financial Responsibility Act, which contains language similar to the Texas statute, required an insurance policy to enable owners of motor vehicles to respond in damages to all innocent victims injured by negligent drivers. *Id.* at 108, 703 P.2d at 885. The court concluded that the household exclusion specifically carved out from coverage a class of persons entitled by law to recover for the owner's or the driver's negligence. *Id.* Thus, the court held that the household exclusion violated public policy and the mandatory liability insurance law. *Id.* at 111, 703 P.2d at 888.

The *Estep* court relied on the analysis of the court in *Mutual of Enumclaw Insurance Co. v. Wiscomb*, 97 Wash.2d 203, 643 P.2d 441 (1982). The *Wiscomb* court found the family member exclusion void as against public policy, although the Washington Financial Responsibility Act was not mandatory. *Wiscomb*, 643 P.2d at 443. The Act required the individual to demonstrate financial responsibility for the future, similar to certified policies in Texas. *Id.* The court determined that the family or household exclusion prevented a class of persons from receiving financial protection under an insurance policy with such an exclusion. *Id.* at 444. The court stated, "The exclusion becomes particularly disturbing when viewed in light of the fact that this class of victims is one most frequently exposed to the potential negligence of the named insured." *Id.* Therefore, the court held that the family or household exclusion clause violated the state's public policy of assuring compensation to the victims of negligent and careless drivers. *Id.* at 446.

The majority of jurisdictions that have addressed the validity of family member exclusions in the context of a mandatory liability insurance law have held that the family or household exclusion is contrary

---

3. *Jilani v. Jilani*, 767 S.W.2d 671, 673 (Tex.1988).

4. *Price v. Price*, 732 S.W.2d 316, 319 (Tex.1987).

to the public policy created by those laws.[5] In contrast, most of Southern's foreign authority upholding the validity of the exclusion is from states that do not have mandatory liability insurance laws.[6] Arizona, Arkansas, and Indiana appear to be the only states that have upheld the family member or household exclusion in the face of a compulsory liability insurance law. *See State Farm Mut. Auto. Ins. Co. v. Transport Indem. Co.,* 109 Ariz. 56, 59, 505 P.2d 227, 230 (1973); *Cook v. Wausau Underwriters Ins. Co.,* 299 Ark. 520, 772 S.W.2d 614, 616 (1989); *Transamerica Ins. Co. v. Henry,* 563 N.E.2d 1265, 1268 (Ind.1990).

The Arizona court in *Transport Indemnity Co.* considered a policy exclusion that did not provide coverage for bodily injuries to the insured. In discussing Arizona's public policy and restrictions on an omnibus clause, the court noted that it had permitted only one exception to the general rule that restrictions in an omnibus clause are against public policy. *Transport,* 109 Ariz. at 59, 505 P.2d at 230. In one case, the court had permitted an automobile owner to contract with his insurance carrier that the injuries by him and his family would be excluded from the policy benefits. *Id.* The court concluded that the exclusion was clearly expressed, voluntary, and resulted in a lower premium for the buyer of the policy. *Id.* In contrast, persons seeking auto liability insurance in Texas do not have freedom of contract. After the Texas Board approved the family member exclusion as an endorsement to state personal auto policies, all Texas personal automobile liability insurance policies issued after May 1, 1987, include the family member exclusion. *See* 12 Tex.Reg. 1126 (1987) (Texas Automobile Manual).

The court in *Cook* held that the family member exclusion did not violate the Arkansas compulsory motor vehicle liability

insurance law, because the legislature specifically provided that this statute was not intended to affect the validity of any policy exclusions. *Cook,* 772 S.W.2d at 616. The Texas compulsory liability insurance law, however, does not contain a similar provision indicating that the law will not alter the provisions or exclusions in an insurance policy. Texas law is silent on the interaction between the compulsory liability insurance law and the language in insurance policies.

In *Henry,* the Indiana Supreme Court decided that, although the financial responsibility law was amended to require all motorists to have liability insurance, the statute did not reveal a public policy to guarantee compensation to all victims of automobile accidents. *Henry,* 563 N.E.2d at 1268. The court noted that, from the time that the legislature first enacted financial responsibility laws, the other two branches of Indiana government had regarded these statutes as "predicated upon a state policy to facilitate recovery for losses suffered because of the negligent operation of motor vehicles by others." *Id.* As early as 1977, when the statute was not mandatory, the courts had ruled that household exclusion clauses would be read as consistent with the public policy of Indiana. *Henry,* 563 N.E.2d at 1268–69 (citing *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096 (Ind.1985) and *United Farm Bureau Mut. Ins. Co. v. Hanley,* 172 Ind. App. 329, 360 N.E.2d 247 (1977)). The *Henry* court noted that, in *Hanley,* the supreme court invited the legislature to clarify any intention to the contrary by explicitly nullifying household exclusion clauses. *Henry,* 563 N.E.2d at 1269. After thirteen years and four statutory revisions, the legislature had still not expressed any intent to void these clauses.

**5.** *State Farm Mut. Auto. Ins. Co. v. Schwartz,* 933 F.2d 848, 852 (10th Cir.1991) (cases cited n. 4); *Meyer v. State Farm Mut. Auto. Ins. Co.,* 689 P.2d 585, 589–90 (Colo.1984); *Farmers Ins. Group v. Reed,* 109 Idaho 849, 851, 712 P.2d 550, 552 (1985); *DeWitt v. Young,* 229 Kan. 474, 625 P.2d 478, 482 (1981); *Bishop v. Allstate Ins. Co.,* 623 S.W.2d 865, 866 (Ky.1981); *Farmers Ins. Exchange v. Call,* 712 P.2d 231, 236 (Utah 1985).

**6.** *Amica Mut. Ins. Co. v. Wells,* 507 So.2d 750, 752 (Fla.Dist.Ct.App.1987); *Walker v. American Family Mut. Ins. Co.,* 340 N.W.2d 599, 602 (Iowa 1983); *Allstate Ins. Co. v. Elwell,* 513 A.2d 269, 272–73 (Me.1986); *Faraj v. Allstate Ins. Co.,* 486 A.2d 582, 585–86 (R.I.1984).

*Id.* Accordingly, the court relied on *Hanley* and *Boles,* decided prior to the statutory amendment making Indiana a "compulsory financial responsibility" state, and held that the exclusion did not violate the public policy of Indiana. *Id.* Thus, the Indiana court's holding was based on historical facts peculiar to that state.

Southern also relies on *Looney v. Farmers Insurance Group,* 616 P.2d 1138, 1141–42 (Okla.1980), to support the validity of the exclusion. However, *Looney* addressed the exclusion of a named insured and only indirectly discussed the "household exclusion" as it is phrased in the Oklahoma statute. On the other hand, the Tenth Circuit Court of Appeals distinguished *Looney* in addressing directly the issue of whether the household exclusion violated the public policy of Oklahoma under the state's compulsory automobile liability insurance law. *State Farm Mut. Ins. Co. v. Schwartz,* 933 F.2d 848, 849, 851 (10th Cir.1991). The *Schwartz* case involved children suing their mother for injuries resulting from her negligent driving. *Id.* at 848. The court noted that Oklahoma case law was contradictory and, therefore, the court looked to foreign authority for guidance. *Id.* at 851–52. It discovered, as we have, that the overwhelming majority of states that have addressed the issue have determined under various lines of reasoning that the household exclusion violates public policy created by compulsory liability insurance laws. *Id.* at 852. The public policy perspective that these statutes adopt is "that of the innocent victim rather than that of the insurer or the insured tortfeasor." *Id.* (quoting *Young v. Mid–Continent Casualty Co.,* 743 P.2d 1084, 1087 (Okla.1987)). The court then affirmed the lower court's holding that the household exclusion violated Oklahoma public policy as expressed in the compulsory automobile liability insurance law.

Based on all of the foregoing, we hold that the portion of the family member exclusion applicable to an unemancipated minor child violates the public policy of this state as expressed by the legislature in the Texas Safety Responsibility Law. In light of this holding, we need not address Segal's contention that the exclusion violates public policy as enunciated by the Texas Supreme Court in *Jilani* and *Price.* We sustain Segal's second point of error.

Having sustained both of Segal's points attacking the validity of the family member exclusion as applied to our facts, we further hold that Southern has a duty to defend Segal in the underlying action. Accordingly, we reverse the trial court's judgment and render judgment for Segal on her motion for partial summary judgment.

### ATTORNEY'S FEES

■ In her third point, Segal asserts that the trial court erred in denying her claim for attorney's fees pursuant to section 37.009 of the Texas Civil Practice and Remedies Code. Segal's counterclaim requested attorney's fees pursuant to section 37.009. That section provides that "a court may award costs and reasonable attorney's fees as are equitable and just" in a declaratory judgment suit. Tex.Civ.Prac. & Rem. Code Ann. § 37.009 (Vernon 1986). Segal contends on appeal that she is entitled to attorney's fees because she had been required to defend an action by her own insurance company based on a void exclusion.

Neither Southern nor Segal sought summary judgment on Segal's counterclaim for attorney's fees. Segal's motion for partial summary judgment states that fact issues exist on her claim for attorney's fees. The record before this Court is devoid of any summary judgment evidence on the issue of attorney's fees. We have held that the trial court should have granted Segal's motion for partial summary judgment. Had the trial court granted Segal's motion, her counterclaim would have remained to be heard. Accordingly, we reverse and remand this cause for a determination of whether, in light of our decision that Southern has a duty to defend Segal in the underlying suit, Segal should be awarded attorney's fees pursuant to section 37.009 of the Texas Civil Practice and Remedies Code. We sustain Segal's third point.

We reverse and render in part and reverse and remand in part.