James B. STEVENS and Dixie J. Stevens, Defendants-Appellants,

Joseph Runnels, Intervenor-Appellant,

v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY, Plaintiff-Appellee.

No. 3–680A181.

Court of Appeals of Indiana, Third District.

June 17, 1981.

Rehearing Denied August 6, 1981.

Robert F. Gonderman, South Bend, for defendants-appellants.

Edward N. Kalamaros and Thomas F. Cohen, Edward N. Kalamaros & Associates, P.C., South Bend, for plaintiff-appellee.

HOFFMAN, Presiding Judge.

The appellants, Stevens et al., appeal from a summary judgment in favor of St. Paul Fire & Marine Insurance Company. The dispositive issue is whether the terms of an insurance policy include a dune buggy within the same "type" recreational vehicle as a motorhome.

The appeal concerns the language of an insurance policy. The underlying facts are not in dispute. On June 25, 1977 Mildred J. Runnels was killed while riding in a dune buggy driven by Dixie J. Stevens. The dune buggy was not owned by either Dixie or her husband, James B. Stevens. The accident gave rise to a wrongful death action initiated by Joseph Runnels as the administrator of Mildred's estate. St. Paul filed a complaint for declaratory judgment against Dixie and James Stevens, seeking a determination of St. Paul's rights and liabilities with regard to the Stevens'. Joseph Runnels was permitted to intervene in the declaratory judgment action.

Prior to the fatal accident, St. Paul issued a recreational vehicle insurance policy to James Stevens. The policy contained the following clause:

"Liability Coverage: The company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage to which the insurance applies, arising out of the ownership, maintenance or use of the *owned or any non-owned recreational vehicle,* and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and

may make such investigation and settlement of any claim or suit as it deems expedient[.] . . ." (Emphasis added.)

The policy also defined the persons insured for accidents involving non-owned recreational vehicles as follows:

"Persons Insured: Each of the following is an Insured under this coverage:

\*　\*　\*　\*　\*　\*

2. With respect to a *non-owned recreational vehicle of the type described in the Declarations of this Policy:*

a. The Named Insured and any relative, provided actual operation by the Named Insured or such relative or (if he is not operating) the other actual use thereof is with the permission or reasonably believed to be with the permission of the owner and is within the scope of such permission[.] . . ."

(Emphasis added.)

The original declaration page of the policy described the insured vehicle as:

| "Make-Model | ID # | H.P & CC |
|---|---|---|
| 1973 Travel Mate | CGY3534168665 | 200 |
| Cost New | Class | Optional Equip." |
| $7,995 | I | |

In 1976 the above vehicle was eliminated and the following description of another vehicle added:

| "Year of Model | Trade Name | ID # |
|---|---|---|
| 1976 | Jamboree | 51074 |
| No. of Cyl. | H.P | Cost New or Current Value |
| | | $12,200 |

Optional Equip."

The policy contained the following definitions:

"A. 'Class I Recreational Vehicle' means a motor vehicle, including equipment permanently attached thereto, designed for use on or off the public roads for recreational purposes that is subject to the motor vehicle registration laws or the financial responsibility laws of the state of principal garaging;

"B. 'Class II Recreational Vehicle' means a motor vehicle, including equipment permanently attached thereto, designed for use on or off the public roads for recreational purposes that is not subject to the motor vehicle registration laws or the financial responsibility laws of the state of principal garaging;

"C. 'Recreational Vehicle Equipment' means a trailer used to convey a recreational vehicle, or manufacturer's designed sleds, toboggans, side cars, or similar equipment designed for use with a recreational vehicle;

"D. 'Class III Recreational Vehicle' means a detachable unit that is under 35 feet in length and is designed to be mounted or partially mounted on a pick-up truck or station wagon, provided that such vehicle is equipped with living facilities and is used for recreational purposes;

"E. 'Class IV Recreational Vehicle' means a trailer that is under 35 feet in length and is designed to be towed by a private passenger car, station wagon or pick-up, provided such vehicle is equipped with living facilities and is used for recreational purposes;

\*　\*　\*　\*　\*　\*

"K. 'Recreational Vehicle' means any vehicle defined in A, B, C, D or E above[.] . . ."

All parties moved for summary judgment. In granting St. Paul's motion, the trial court found that the contract was not ambiguous. The trial court also found that the insured vehicle is a motorhome and not the same type recreational vehicle as the dune buggy.

The standard for determining whether an ambiguity in an insurance policy exists is whether reasonable persons, on reading the contract, would honestly differ as to its meaning. *Huntington Mut. Ins. Co. v. Walker* (1979), Ind.App., 392 N.E.2d 1182. Ambiguity is not established by a mere showing that a controversy exists. *Liddy v. Companion Ins. Co.* (1979), Ind.App., 390 N.E.2d 1022. The trial court found no ambiguity in the insurance policy. A review

of the provisions of the policy reveals no error in the trial court's finding.

Absent ambiguous language, the intent of the parties must be effectuated by giving the policy terms their plain, usual and ordinary meaning. *Meridian Mut. Ins. Co. v. Gulf Ins. Co.*, (1977), Ind.App., 366 N.E.2d 190. The meaning of a particular provision in an insurance policy can only be ascertained after a consideration of the entire policy. *Taylor et al. v. Amer. Underwriters* (1976), 170 Ind.App. 148, 352 N.E.2d 86.

Upon examination of the entire policy at issue in this case, there emerges only one reasonable interpretation to be given the phrase "non-owned recreational vehicle of the type described in the declarations of this policy." The policy specifically categorizes recreational vehicles into five distinct types. Presumably, these categories are sufficiently broad to cover all kinds of recreational vehicles which could be insured by the provisions of the policy. The evidence shows that the insured vehicle is a motorhome. Although the description of the 1976 Jamboree does not contain the designation "Class I," the affidavits show that the Jamboree does fit within the limits of what is defined as a Class I recreational vehicle. All vehicles within this definition are a specific "type" of vehicle under the terms of the policy. The issue to be determined is whether or not the dune buggy is also included within this "type" of recreational vehicle.

The motorhome is included within the first type of recreational vehicle which is defined in the policy as follows:

" 'Class I Recreational Vehicle' means a motor vehicle including equipment permanently attached thereto, designed for use on or off the public roads for recreational purposes that is subject to the motor vehicle registration laws or the financial responsibility laws of the state of principal garaging[.]"

The only dispute arises with regard to whether the dune buggy is subject to the motor vehicle registration laws or the financial responsibility laws of Indiana.

The affidavits show that at the time of the accident, the dune buggy was being operated on a public road and was carrying a 1977 Indiana dealer's license plate, number 2116M4. The affidavits also establish that the dune buggy was a motor vehicle and designed for recreational purposes either on or off the public roads.

The financial responsibility laws of Indiana are contained in IC 1971, 9–2–1–1––9–2–1–45 (Burns Code Ed.). IC 1971, 9–2–1–2 defines motor vehicle as "[e]very vehicle which is self-propelled upon a public highway in this state, excepting farm tractors." IC 1971, 9–2–1–4 requires proof of financial responsibility as follows:

"Security or proof required following accident—Court review.—(a) The Commissioner shall require, within not less than ten (10) days nor more than ninety (90) days after an accident, from any person who, *while operating any motor vehicle*, shall have been involved in any motor vehicle accident resulting in bodily injury or death, or in damage to property in excess of two hundred dollars ($200), or, in the discretion of the Commissioner, from the person in whose name the motor vehicle is registered, or both, security sufficient in the discretion of the Commissioner to indemnify the injured party against loss and guarantee the payment and satisfaction of any judgment or judgments for damages resulting from the accident as may be recovered against the owner or operator by or on behalf of the injured person or his legal representative, and in addition, the Commissioner may require the operator, or in the Commissioner's discretion, the person in whose name the motor vehicle is registered, or both to file proof of financial responsibility during the period of two (2) years following the date of the accident. If the owner or operator shall satisfy the Commissioner that the liability, if any, for damages resulting from the accident is insured by an insurance policy or bond, or the liability released, the Commissioner shall not require security from the owner or operator. The words 'shall require' are to be construed as being words of di-

rection rather than words of mandate." (Emphasis added.)

The dune buggy, being a motor vehicle and designed for use either on or off the public roads, is clearly subject to the financial responsibility laws of Indiana. Pursuant to the terms of the insurance policy, the dune buggy meets the same definitional requirements as a motorhome and must therefore be considered the same type of recreational vehicle as the motorhome. The trial court erred in not so finding. Because no other material issue of fact was presented, summary judgment should have been entered in favor of Stevens et al.

For the foregoing reasons, the judgment of the trial court is reversed and remanded for proceedings consistent with this opinion.

Reversed and remanded.

GARRARD and STATON, JJ., concur.