**HASTINGS MUTUAL INSURANCE COMPANY, Appellant–Defendant,**

v.

**Cordia Marie WEBB, and James R. Webb, Individually and as Husband and Wife, Appellees–Plaintiffs,**

and

**Mary Schmidt, William Schmidt, As Parent and Guardian of Mary Schmidt, and Gary Ettel Non–Appealing Defendants.**

No. 88A05–9504–CV–133.

Court of Appeals of Indiana.

Dec. 20, 1995.

 

Mark R. Smith, Smith & Bemenderfer, Indianapolis, for appellant.

David P. Allen, Allen, Allen & Allen, Salem, for appellee.

## OPINION

KIRSCH, Judge.

Hastings Mutual Insurance Company (Insurance Company) appeals the trial court's denial of summary judgment regarding the uninsured motorist coverage in James Webb's automobile liability policy. The parties present a single issue for appeal, which we restate as:

> Whether the Uninsured Motorist Endorsement in the insurance contract covers a collision with a pony-drawn cart.

We reverse.

### FACTS AND PROCEDURAL HISTORY

James and Cordia Webb's pickup truck collided with a pony-drawn cart driven by Mary Schmidt, an Amish woman. The Webbs filed a lawsuit against Schmidt, among others. When advised that Schmidt had no insurance, James Webb notified the Insurance Company that he intended to file an insurance claim under the Uninsured Motorist endorsement of his automobile liability policy (the Endorsement).

The Insurance Company intervened in the lawsuit and filed a summary judgment motion, arguing that the Endorsement did not cover the collision. The trial court found the operative terms in the Endorsement ambiguous because "[r]easonable people could conclude that the undefined term, trailer, included the pony cart in this case...." *Record* at 424–25. The court denied the summary judgment motion. The Insurance Company sought, and the trial court granted, certification of the summary judgment order for interlocutory appeal according to Ind.Appellate Rule 4(B)(6). This court certified the order for appeal.

## DISCUSSION AND DECISION

### I. *Standard of Review*

This court applies the summary judgment standard used in the trial courts. *Selleck v. Westfield Ins. Co.* (1993), Ind.App., 617 N.E.2d 968, 970, *trans. denied*. Summary judgment is appropriate when there are no material factual issues related to the summary judgment motion. Ind.Trial Rule 56(C); *Indiana Dep't of Pub. Welfare v. Murphy* (1993), Ind.App., 608 N.E.2d 1000, 1002. Summary judgment is particularly fitting where, as here, the dispute centers on a contract interpretation. *Terre Haute First Nat'l Bank v. Pacific Employers Ins. Co.* (1993), Ind.App., 634 N.E.2d 1336, 1337. In the insurance context, summary judgment is a determination that the contract is unambiguous and that the rules of contract interpretation are not needed to ascertain the contract's meaning. *Id.*

### II. *Policy Provisions at Issue*

The parties agree that resolution of this appeal turns on two contract sections: the general Definitions section and the Uninsured/Underinsured Motorists Coverage Endorsement. The word "trailer" appears in both sections, and the dispute is whether a trailer includes a pony-drawn cart.

The general Definitions section has two types of defined terms: those that apply throughout the policy, and those that apply only when the defined term appears in quotation marks. *Record* at 62. The term at issue, "trailer," is the second type of defined term. The relevant portion of the definition reads:

> "Other words and phrases are defined. *They are in quotation marks when used.*
>
> . . . .
>
> I. "Trailer" means a vehicle designed to be pulled by a: 1. Private passenger auto; or
>
> 2. Pickup or van.
>
> It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above."

*Record* at 62 (emphasis added).

The parties disagree as to whether this policy definition applies to the word trailer as used in the Endorsement. The Endorsement reads:

> "We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an ... 'Uninsured motor vehicle'
>
> . . . .
>
> 'Uninsured motor vehicle' means a land motor vehicle or *trailer of any type....*"

*Record* at 75–76 (emphasis added). No quotation marks appear on the phrase **trailer of any type** in the Endorsement.[1]

### III. *Ambiguity of Contract*

Both parties recognize that the initial inquiry is whether the operative phrase in the Endorsement is ambiguous. If the phrase is ambiguous, the contract must be construed in favor of the policyholders. *Tate v. Secura Ins.* (1992), Ind., 587 N.E.2d 665, 668. If, however, the phrase is unambiguous, the contract applies according to the plain and ordinary meaning of the terms, even if the terms limit coverage. *Miller v. Dilts* (1984), Ind., 463 N.E.2d 257, 265; *American States Ins. Co. v. Aetna Life & Cas. Co.* (1978), 177 Ind.App. 299, 309, 379

---

1. In addition to discussing the term trailer, the Insurance Company presents an analysis of the term land motor vehicle. The policyholders apparently concede that the latter term cannot apply to a pony-drawn cart. Accordingly, we do not consider whether a pony-drawn cart is a land motor vehicle within the meaning of the policy.

**1052**

N.E.2d 510, 516. That the parties espouse differing interpretations of the terms does not mean the contract is ambiguous. *Meridian Mut. Ins. Co. v. Cox* (1989), Ind.App., 541 N.E.2d 959, 961, *trans. denied.* An insurance contract is ambiguous only if reasonable people reading the contract would differ as to the meaning of the terms. *Id.*

■ The dispute here centers on the difference between the term "trailer" as used in quotation marks, and the phrase **trailer of any type,** as used without quotation marks. The Insurance Company contends that there is no difference between the two and that the policy definition of "trailer" controls the phrase **trailer of any type.** As such, the Insurance Company argues, the Endorsement covers only collisions with trailers pulled by private passenger autos, pickups or vans.

The policyholders insist that the lack of quotation marks in the phrase **trailer of any type** precludes reference to the policy definition. According to the policyholders, the term trailer is not defined for purposes of the phrase, so the phrase must include "anything that remotely can be called a trailer," in particular, a pony-drawn cart. *Appellee's Brief* at 8.

■ An insurance contract must be construed as a whole. *Stevens v. St. Paul Fire & Marine Ins. Co.* (1981), Ind.App., 422 N.E.2d 319, 321. Construction of the contract as a whole requires reading beyond isolated phrases. Unclear terms can be clarified by reading the entire contract, and "the meaning of a term may be enlarged or restrained by reference to the object of the whole clause in which it is used." *Farm Bureau Mut. Ins. Co. v. Carr* (1974), 215 Kan. 591, 528 P.2d 134, 138, citing *Virginia v. Tennessee* (1893), 148 U.S. 503, 13 S.Ct. 728, 37 L.Ed. 537.

Here, a review of the contract as a whole demonstrates that the phrase **trailer of any type** is unambiguous, and that it does not include a pony-drawn cart. Two aspects of the policy illustrate the limited meaning of the phrase: (1) the distinction made between

"trailer" and **trailer of any type,** and (2) the context of the phrase **trailer of any type.** First, the policy makes a distinction between the defined term and the disputed phrase. In certain sections of the policy, the term "trailer" appears in quotation marks, signifying that the policy definition controls the term. *See Record* at 65, 68, 69. In other policy sections the phrase **trailer of any type** is used, without quotation marks on the word trailer. *See Record* at 65, 66. As such, the words **of any type** give the phrase a broader meaning than the defined term "trailer."

■ The breadth of meaning does not, however, render the phrase ambiguous. The meaning of the phrase is plain from its context: it is part of the definition of "Uninsured **motor** vehicle." To read the words trailer of any type as including a pony-drawn cart would be to sever the words from the very term they define. Contract law does not allow policyholders to look to isolated phrases in insurance contracts as a means of obtaining coverage. *See Farm Bureau Mutual Ins. Co. v. Carr* (1974), 215 Kan. 591, 528 P.2d 134, 138. Rather, the law requires reference to associated words in the contract to determine whether a loss is covered. *See Equitable Life Assurance Soc'y v. Crowe* (1976), 170 Ind.App. 677, 688, 354 N.E.2d 772, 779 (policy language must be given meaning consistent with the entire policy); *see also Carr,* 528 P.2d at 138 (basic contract principle is to refer to associated words for meaning of terms). Here, any doubt about the phrase in isolation is removed by reference to the associated words—uninsured **motor** vehicle. As part of the definition of "Uninsured motor vehicle," the meaning of the phrase **trailer of any type** is clear. The phrase indicates that the contract covers losses arising from uninsured trailers pulled by **any type of motor vehicle.** The contract does not cover losses arising from trailers pulled by ponies.[2]

### IV. *Applicability of the Indiana Uninsured Motorist Statute*

■ Aside from the question of ambiguity, the parties disagree about the effect of

2. Because the phrase is unambiguous, we do not consider the Insurance Company's alternative argument that statutory definitions govern the phrase.

the Indiana Uninsured Motorist statute on the Endorsement. The Insurance Company contends that the statute excludes coverage of the policyholders' claims. The policyholders respond that although the statute does not require coverage, the phrase **trailer of any type** expands coverage beyond that required by the statute. As discussed in part III above, the phrase **trailer of any type** does not expand the policy coverage to include a collision with a pony-drawn cart. We must nonetheless determine whether the Uninsured Motorist statute requires coverage of the collision.

This issue turns on two laws: the Financial Responsibility Act[3] and the Uninsured Motorist statute.[4] Our supreme court explained the interaction between these laws in *City of Gary v. Allstate Ins. Co.* (1993), Ind., 612 N.E.2d 115 and *Transamerica Ins. Co. v. Henry* (1990), Ind., 563 N.E.2d 1265. The Financial Responsibility Act compels motorists to demonstrate their ability to respond in damages for liability. *City of Gary* at 117. The overwhelming majority of motorists fulfil the Act's requirement by purchasing liability insurance. *Henry* at 1268. Recognizing that some motorists will fail to comply with the Act, the legislature enacted the Uninsured Motorist statute, which mandates that insurance carriers offer coverage against losses involving uninsured motorists. IC 27–7–5–2(a) (1992 Supp.).

■■■■ The purpose of the requisite uninsured motorist coverage is "to put the injured party in the place they would have been if the other person had complied with the financial responsibility law." *City of Gary* at 117. The laws do not, however, guarantee compensation to every person injured by someone without insurance. *Henry* at 1268, *City of Gary* at 117. Uninsured motorist endorsements need not cover accidents that are outside the scope of the Financial Responsibility Act.

3. IC 9–25–4–1 (1992 Supp.).

4. IC 27–7–5–2 (1992 Supp.).

5. In the Financial Responsibility Act, the initial reference to "vehicle" as opposed to "motor vehicle" could create confusion as to whether the

Here, the operator of the pony-drawn cart was not legally required to purchase insurance. The Financial Responsibility Act in effect at the time of the collision stated:
"A person who:
(1) Registers a *vehicle;* or
(2) Operates a *vehicle* on a public highway; in Indiana must meet the minimum standards for financial responsibility set forth in ... this chapter with respect to the *motor vehicle.*

IC 9–23–4–1 (1992 Supp.) (emphasis added). The referenced financial responsibility standards require operators of "motor vehicles" to demonstrate the ability to respond in damages for liability. IC 9–23–4–5 (1992 Supp.). Only operators of **motor vehicles** are required to carry insurance (or otherwise comply with the Financial Responsibility Act).[5] Pony-drawn carts are exempt. *See* IC 9–13–2–105 (1992 Supp.) ("Motor vehicle means ... a vehicle that is self-propelled.") As such, the collision at issue here is outside the scope of coverage mandated by the Financial Responsibility Act and, in turn, is not within the requisite coverage of the Uninsured Motorist statute.

This result comports with a decision addressing a similar issue in *Rosenbaum v. Safeco Ins. Co. of America* (1968), Ky., 432 S.W.2d 45. In *Rosenbaum,* the policyholder claimed that his uninsured motorist endorsement should cover his losses from a collision with a horse-drawn farm wagon. The *Rosenbaum* court rejected the claim, stating:
"It is reasonably clear that the primary inducement for 'uninsured motorist' coverage is the providing of protection in the situation where injury is inflicted by a vehicle of a type on which liability insurance customarily is carried. In other words, the idea is that a person can buy, from his own insurer, protection against the failure of the other fellow to carry normal liability coverage. Surely there has not been much concern about insuring

Act applies to non-motorized vehicles. *See* IC 9–25–4–1. The subsequent reference to "motor vehicle" removes the confusion. *See also* IC 9–25–4–4 ("For the purposes of this article, financial responsibility is in effect with respect to a motor vehicle....")

oneself against the failure of other people to carry insurance on things which normally are not insured."

432 S.W.2d at 47.

### V. *Reasonable Expectations*

The policyholders contend they had a reasonable expectation of coverage for a collision with a pony-drawn cart. They further contend that a collision with a pony-drawn cart was reasonably foreseeable, and that as such the Endorsement should provide coverage for their alleged losses. The policyholders provide no citations for these contentions.[6]

The Insurance Company responds that it is unreasonable to expect coverage for a collision with a pony-drawn cart. In addition, the Insurance Company presents an argument concerning the "doctrine of reasonable expectations." The Insurance Company maintains the "doctrine" does not apply in this case.

No Indiana decision has considered this "doctrine" in depth, and it is not necessary to do so in this case. Indiana courts have addressed the reasonable expectations concept in only two insurance contexts: (1) where the policy at issue is ambiguous (*see Eli Lilly and Co. v. Home Ins. Co.* (1985), Ind., 482 N.E.2d 467, 470–71, *cert. denied*, (1987) 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990) and (2) where the coverage at issue would be illusory if the policy were enforced (*see Davidson v. Cincinnati Ins. Co.* (1991), Ind.App., 572 N.E.2d 502, 508, *trans. denied.*) Here, the Uninsured Motorist coverage is not illusory. It covers the risk of uninsured motorists, but not the risk of uninsured pony-drawn carts. Nor is the endorsement ambiguous (see Part III above). Accordingly, it is unnecessary to discuss or consider the "doctrine of reasonable expectations" here.

In sum, the Uninsured Motorist Endorsement at issue here is unambiguous, and it does not provide coverage for the policyholders' collision with an uninsured pony-drawn cart. Accordingly, the Insurance Company was entitled to summary judgment. We reverse the denial of summary judgment and remand with instructions to enter summary judgment in favor of Hastings Mutual Insurance Company.

Reversed.

FRIEDLANDER and NAJAM, JJ., concur.

---

**6.** Although the policyholders initially state that no extrinsic evidence is necessary to resolve this appeal, they later contend that they and the Insurance Company both "knew" of the "routine" horse and buggy traffic in Washington County. *Appellee's Brief* at 8. The policyholders further contend that the Insurance Company used the phrase **trailer of any type** for the very purpose of covering horse-drawn vehicles. *Id.* Information as to what the parties "knew" is extrinsic evidence and is unnecessary to the resolution of this appeal. *Tate v. Secura Ins.* (1992), Ind., 587 N.E.2d 665, 668 ("It is only where a contract is ambiguous and its interpretation requires extrinsic evidence that the fact finder must determine the facts upon which the contract rests.") Moreover, the summary judgment record contains no support for the policyholders' contentions.