## ILLINOIS FARMERS INSURANCE COMPANY, Plaintiff–Appellee,

v.

**James ADAMS, Diana Adams, individually and as personal representatives of the Estate Of Lisa Adams, Defendants–Appellants.**

No. 97–4017.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1998.

Decided July 14, 1998.

Laura S. Reed (argued), Bryce H. Bennett, Jr., Riley, Bennett & Egloff, Indianapolis, IN, for Plaintiff–Appellee.

Jon A. Dartt (argued), Dartt & Dartt, Rockport, IN, for Defendants–Appellants.

Before CUMMINGS, ROVNER and EVANS, Circuit Judges.

CUMMINGS, Circuit Judge.

On July 21, 1995, Lisa Adams was killed in an automobile collision in Georgia. Her parents filed a claim with their auto insurance provider, Illinois Farmers Insurance Company ("Farmers"). Farmers denied the claim and filed this declaratory judgment action to decide whether it bears any liability arising out of the accident. The district court granted summary judgment for Farmers, concluding that provisions of the Adamses' policies precluded coverage for the accident under Indiana law. The Adamses appeal, and this Court affirms.

## I. BACKGROUND

James and Diana Adams owned five automobile insurance policies issued by Farmers. Each of these policies included underinsured motorist coverage with limits of $100,000 per person and $300,000 per occurrence. When the Adamses' daughter, Lisa, was killed, she was driving a 1993 Plymouth Acclaim that was not insured by Farmers. The Acclaim, rather, was insured by State Farm Mutual Automobile Insurance Company ("State

Farm"); this policy included underinsured motorist coverage with the same policy limits as the Adamses' Farmers policies. The car with which Lisa Adams' car collided was also insured by State Farm up to coverage limits of $100,000 per person and $300,000 per occurrence. The Adamses have collected $100,000 from State Farm under this last policy.

After the Adamses filed claims under their Farmers policies for underinsured motorist benefits, Farmers initiated this suit for declaratory judgment. Farmers argues that, because the policies issued to the Adamses included "antistacking" provisions that count benefits paid under other policies toward the coverage limits, the Adamses are not entitled to any recovery beyond the $100,000 they have already received from State Farm. The Adamses counter that a choice of law provision in their insurance policies means that Georgia law should apply to the dispute, and that Georgia law would preclude Farmers from enforcing the anti-stacking provisions.

The language the Adamses cite from the policies is as follows: "Subject to the law of the state of the occurrence, we will pay no more than these maximums regardless of the number of vehicles insured, insured persons, claims, claimants, policies, or vehicles involved in the occurrence." Because the occurrence—the fatal accident—took place in Georgia, the Adamses argue, any limitation on their recovery must be subject to Georgia law.

The difficulty arises from the fact that the policies, when issued to the Adamses, also included endorsements. In the main policy document, underinsured motorist coverage was provided together with uninsured motorist coverage, with the same provisions governing both types of coverage. Endorsement 1105G, however, deleted from the main policy form the provisions relating to underinsured motorist coverage. A letter on the reverse side of the endorsement stated that the purpose of this deletion was "so that [underinsured motorist coverage] can be issued as a separate and distinct coverage." The letter went on to state that the endorsement "does not diminish existing coverage under either Uninsured or Underinsured Motorist Coverage." A separate endorsement, number 1179i, then reestablished underin-

sured motorist coverage. This new coverage did not include the "subject to the law of the state of the occurrence" language found in the main policy document.

The Adamses claim that the language of the letter accompanying endorsement 1105G—stating that the change would not "diminish existing coverage"-means that Farmers cannot now claim that the endorsements removed the local law provision from their policies. They appear to concede that Indiana law would allow Farmers to enforce the antistacking provisions, thus denying the Adamses any further recovery. Because Georgia law ostensibly would entitle them to recover, they claim that disregarding the local law language would represent a diminishment in the existing coverage contained in the main policy form.

The district court rejected this line of argument, holding that the main policy form and the endorsements could not be separated in this way. Because the endorsements were included with the policies when Farmers first issued them to the Adamses, the court insisted that each policy, including its endorsements, be read as a single, unified document. Read in this manner, the main policy form could not be said to have established any "existing" coverage prior to the endorsements. The letter accompanying endorsement 1105G, therefore, did not mean that the endorsements could not provide coverage less generous than that outlined in the main policy form standing alone. Having reached this conclusion, the district court held that the underinsured motorist coverage outlined in endorsement 1179i did not contain a choice of law provision, and thus that Indiana law applied, precluding any further recovery for the Adamses. The court granted summary judgment in favor of Farmers.

## II. DISCUSSION

■ The Adamses do not set out to prove that their reading of the insurance contract is the only one possible. Rather, they seek only to show that the availability of such a reading renders the contract ambiguous on the key question of what state's law governs the policies' anti-stacking provisions. Under Indiana law, ambiguities in insurance con-

tracts must be construed in favor of the insured. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992).

 The Adamses' case fails, however, to establish an ambiguity. Clear and unambiguous policy language is to be given its plain and ordinary meaning. *Id.* Endorsement 1105G very plainly deletes the underinsured motorist coverage set forth in the main policy document. Just as plainly, endorsement 1179i establishes underinsured motorist coverage that does not include the local law provision found in the main document. Only if the main policy language is somehow still operative can the Adamses hope to apply Georgia law to the anti-stacking provisions, thus saving their claim.

But the district court was undoubtedly correct that the policies and the endorsements that accompanied them when they were issued must be read together, rather than sequentially. See *Hastings Mut. Ins. Co. v. Webb*, 659 N.E.2d 1049, 1052 (Ind.Ct.App. 1995) (construing endorsement and main policy together). The contrary result would be odd indeed, for it would require a court to read the main policy document and then pause, assessing what the "existing" coverage included at that moment, before going on to read the endorsements that were issued at the very same time.

The Adamses argue that the district court's ruling renders meaningless the promise contained in the letter on the reverse of endorsement 1105G that the endorsement would not diminish existing coverage. But the letter, assuming for the moment that it is part of the insurance contract at all, is best read as "boilerplate" language intended to apply only to those policies that were in effect before the endorsements were issued. Had the Adamses been covered under the main policy prior to the addition of the endorsements, they would have possessed "existing coverage," and arguably would be in a position to protest any diminishment of that coverage by the endorsements. To imply that the letter requires that the main policy be read prior to and apart from endorsements issued contemporaneously with it, however, is a strained and implausible extension. The Adamses have not established that the policy as a whole is ambiguous on the question whether the local law provision contained in the main policy's version of underinsured motorist coverage still applies to the new version contained in endorsement 1179i.

Our disposition of the case makes it unnecessary to consider Farmers' alternative arguments for affirmance. Because the Adamses concede that the anti-stacking provisions, when interpreted according to Indiana law, preclude any further recovery, the district court was correct in granting summary judgment in favor of Farmers.

AFFIRMED.