977 P.2d 140

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff–Appellee,**

v.

**Gary LOESL, surviving husband of Mary M. Loesl, for and on behalf of himself and his minor children, Defendant–Appellant.**

**No. 1 CA–CV 98–0216.**

Court of Appeals of Arizona, Division 1, Department B.

April 1, 1999.

O'Connor, Cavanagh, Anderson, Killings-worth & Beshears, P.A. by: Christopher Robbins and: Frank M. Fox, Phoenix, for Plaintiff–Appellee.

Scott A. McKay, P.C. by: Scott A. McKay and Gregg H. Temple, P.C. by: Gregg H. Temple, Phoenix, for Defendant–Appellant.

## OPINION

GARBARINO, Judge.

¶ 1 This is a declaratory judgment action filed by State Farm Mutual Automobile Insurance Company. Its insured, Jack Boyle, drove his friend, Bobby Sims, to Sims' automobile. Sims, who was drunk, drove and caused an accident in which the appellant's wife was killed. The question is whether the accident was the result of the use of Boyle's vehicle within the meaning of Boyle's insurance policy. We hold that it was not.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On the morning of December 9, 1995, Jack Boyle, Bobby Sims, and Jim Korba met to drive to an area near Florence to go gold prospecting. Sims left his vehicle at the meeting place and rode with Boyle. Sims brought a bottle of whiskey, a twelve-pack of beer, and a gun. During the drive and after reaching their destination, Sims drank much of the liquor and became intoxicated. He fired the gun into the air, argued with Boyle and Korba, and then ran into the desert.

¶ 3 Boyle and Korba wanted to leave but did not want Sims to be stranded in the desert. They drove to the Pinal County Sheriff's Office in Florence. Korba then returned to Chandler while Boyle led sheriff's deputies to the place where they had last seen Sims. Boyle and the officers eventually found Sims, who had passed out in a thorn bush. The deputies told Boyle that he could either drive Sims home or they would take Sims to jail. Boyle elected to drive Sims home.

¶ 4 During the ride home, Sims found his gun, which Boyle and Korba had earlier taken from him and unloaded. Sims pointed the gun at other motorists on the freeway and then threatened to hurt Boyle if Boyle did not take him back to his vehicle. Boyle took Sims to his vehicle. About two hours later, Sims caused a car accident in which Mary Loesl was killed. Sims' blood alcohol content was 0.28.

¶ 5 At the time of the accident, Boyle had an automobile insurance policy issued by appellee State Farm Mutual Automobile Insurance Company. The policy provided the following liability coverage:

We will:

1. Pay damages which an *insured* becomes legally liable to pay because of:

   a. *bodily injury* to others, and

   b. damage to or destruction of property including loss of its use,

caused by accident resulting from the ownership, maintenance or use of *your car* . . . .

¶ 6   Appellant Gary Loesl, the husband of Mary Loesl, made a claim against Boyle's State Farm policy. State Farm denied the claim, reasoning that "the described [covered] vehicle was used only to transport Mr. Sims to his vehicle, and this incidental 'use' should not obligate State Farm to provide coverage for the accident. . . . The insured's [Boyle's] vehicle was neither a 'predominating factor' [n]or 'substantial cause' in the automobile accident."

¶ 7   State Farm filed a declaratory action seeking a ruling that the policy did not provide liability coverage for Boyle's alleged failure to prevent Sims from driving while under the influence of alcohol. State Farm then filed a motion for summary judgment arguing that the accident did not arise out of the "use" of Boyle's vehicle because Mary Loesl's death resulted from the operation of Sims' vehicle.

¶ 8   Loesl filed a cross-motion for summary judgment, arguing that the accident "resulted from" Boyle's use of the vehicle if it contributed even slightly to the injury. Loesl asserted that if Boyle had used his car as he should have and driven Sims home rather than to his truck, the accident would not have occurred.

¶ 9   The trial court granted State Farm's motion, finding that Boyle's automobile insurance policy did not provide coverage for the accident caused by Sims. Loesl timely appealed from the judgment entered in favor of State Farm.

## DISCUSSION

¶ 10   The facts are not in dispute and the disposition of the case turns on a legal question, which we review de novo. *See Transportation Ins. Co. v. Bruining*, 186 Ariz. 224, 226, 921 P.2d 24, 26 (1996).

¶ 11   Under Arizona law, for liability coverage to apply when a "use" provision is in effect, a causal relationship between the injury-causing accident and the use of the covered vehicle must exist. *Benevides v. Arizona Property & Cas. Ins. Guar. Fund,* 184 Ariz. 610, 612, 911 P.2d 616, 618 (App. 1995); *Love v. Farmers Ins. Group,* 121 Ariz. 71, 74, 588 P.2d 364, 367 (App.1978). The injury need not be directly and proximately caused, in the strict legal sense, by the motor vehicle. *Farmers Ins. Co. of Arizona v. Till,* 170 Ariz. 429, 430, 825 P.2d 954, 955 (App. 1991).

¶ 12   "The fundamental question is whether the use of the [covered] vehicle was itself the cause of the injury." *Ruiz v. Farmers Ins. Co.,* 177 Ariz. 101, 104, 865 P.2d 762, 765 (1993). To recover under the insurance policy, the injured party must show that the covered "vehicle caused and produced [the] injury, not that it merely facilitated [the] injury." *Id.* at 103, 865 P.2d at 764.

¶ 13   In determining a coverage question involving the use of a vehicle, our supreme court explained: "The insurance is to pay for the negligent acts of the insured committed during the operation or use of the motor vehicle. . . . It should be emphasized: Liability arises out of negligent acts in the use of motor vehicles which proximately cause the accident and injuries." *Morari v. Atlantic Mut. Fire Ins. Co.,* 105 Ariz. 537, 538, 468 P.2d 564, 565 (1970). In other words, "even though the causal relationship between the motor vehicle and the accident does not have to be the proximate cause of the accident, the accident must be caused by a negligent act in the use of the motor vehicle." *Associated Indem. Corp. v. Warner,* 143 Ariz. 585, 588, 694 P.2d 1199, 1202 (App.1983), *modified on other grounds,* 143 Ariz. 567, 694 P.2d 1181 (1985).

¶ 14   We conclude that the accident did not result from Boyle's use of his vehicle. Boyle used his vehicle to take Sims to his vehicle. This was not a negligent use of Boyle's vehicle. The negligence, if any, was Boyle's decision to take Sims to his vehicle. The accident was not caused by Boyle's negligence in the manner in which he drove his vehicle. The duty to refrain from enabling an intoxicated person to drive a vehicle is independent from the duty to drive a vehicle in a safe manner. *See Kessler v. Amica Mut. Ins. Co.,* 573 So.2d 476, 479

(La.1991) (finding that the duty imposed upon individuals to refrain from shooting at someone existed independently of the use of the automobile). Boyle's use of his vehicle to transport Sims to Sims' vehicle was merely incidental to Mary Loesl's death and in no way caused her injuries.

¶ 15 Our conclusion is consistent with decisions of courts in other jurisdictions that have reached similar results under similar circumstances. For example, in *Interinsurance Exch. v. Macias*, 116 Cal.App.3d 935, 172 Cal.Rptr. 385 (1981), the insured used his car to transport his intoxicated son to another car knowing that his son would drive the car. *Id.* at 386. Macias was injured when struck by the car driven by the son. *Id.* Macias sued the father, claiming that the father's use of his vehicle to transport his intoxicated son to another car to enable him to drive established a causal relationship that allowed recovery for her injuries from the father's vehicle insurance policy. *Id.*

¶ 16 The court held that while the father might have joint responsibility for the injuries caused by his son, his vehicle insurer did not. *Id.* It reasoned that when the son left the father's vehicle and committed a negligent act in driving his own vehicle, "his independent acts broke the 'causal' link between the 'use' of the insured vehicle and Macias' injuries." *Id.* at 387. The *Macias* court noted that courts in other jurisdictions had similarly ruled that the mere transportation of a tortfeasor to a site where he commits a tort does not establish the requisite causal relationship. *Id.*

¶ 17 In *Holm v. Mutual Service Casualty Insurance Co.*, 261 N.W.2d 598 (Minn.1977), a police officer chased the plaintiff with his car and then injured the plaintiff while placing him under arrest. *Id.* at 602. The court denied the plaintiff's attempt to recover under the liability policy on the police car. *Id.* at 604. It found that "the *physical* injuries [the officer] inflicted upon [the plaintiff] were equally unrelated to the 'use' of the police vehicle" because the "car had served only to transport him to the scene of the incident." *Id.* at 603. The *Holm* court also noted that "the acts of leaving the vehicle and inflicting a battery were viewed as events of independent significance which broke the causal link between the 'use' of the vehicle and the injuries inflicted." *Id.* The court further explained that " 'the vehicle itself must be an *active* accessory' to the injury sustained." *Id.* (quoting *National Mut. Cas. Co. v. Clark*, 193 Miss. 27, 7 So.2d 800, 805 (1942)).

¶ 18 Also, in *Miller v. Keating*, 339 So.2d 40 (La.App.1976), *affirmed and amended on other grounds*, 349 So.2d 265 (La.1977), the plaintiff argued that the injuries he sustained from a battery arose out of the "use" of the vehicle that transported some of the conspirators to and from the location of the battery and that contained a two-way radio, which allowed communication between the conspirators. *Id.* at 45–46. The court rejected that argument, concluding that "[t]he connection between the use of the truck and that voluntary act of violence is so remote and insignificant that it cannot reasonably be said that plaintiff's injury arose out of the use of that vehicle." *Id.* at 46.

¶ 19 Similarly, in *Nationwide Mutual Insurance Co. v. Brown*, 779 F.2d 984 (4th Cir.1985), Brown's employee drove him to a meeting with Brown's estranged wife, knowing that Brown intended to shoot her. *Id.* at 986. Brown killed his wife, and her estate and daughter made a claim under the liability coverage on the vehicle driven by the employee based upon the employee's negligence in transporting a dangerous person to a place where he could carry out a known threat. *Id.* at 988. The court concluded that the use of the truck to transport Brown to the scene of the shooting "was merely incidental, remote from the type of conduct that is reasonably foreseeable with the normal use of such a vehicle; and not the causative factor in producing Lynda Brown's death." *Id.* at 989. It described Brown's assault as "an act wholly independent of the use of the truck, [which] caused the death." *Id.* The court thus held that "the incidental use of [the] truck in the shooting does not meet the causal relation test of coverage." *Id.*

■ ¶ 20 Likewise, in this case, Sims' errant driving, which caused Mary Loesl's death, was independent of Boyle's use of his vehicle. Boyle's use of his vehicle was incidental to the accident. It may well be true

that Boyle could be liable for Mary Loesl's death. However, it was not the negligent use of his vehicle that caused her death. We differentiate between an analysis of cause under a general liability policy and an analysis of cause under an automobile liability policy because parties to an automobile liability policy do not, and should not, contemplate that the policy is a general liability insurance contract. *See Macias*, 172 Cal.Rptr. at 387; *Truck Ins. Exch. v. Webb*, 256 Cal.App.2d 140, 63 Cal.Rptr. 791, 794 (1967). "The automobile is so much a part of American life that there are few activities in which the 'use of an automobile' does not play a part somewhere in the chain of events." *Webb*, 63 Cal.Rptr. at 794. Insurers should not be responsible for liability coverage that is far beyond what the parties to the policy intended.

¶ 21 We affirm the trial court's entry of summary judgment.

JAMES B. SULT, Presiding Judge, and MICHAEL D. RYAN, Judge, concur.