SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| EDWARD POWELL and BONNIE POWELL; ) | Arizona Supreme Court |
| ARTHUR ANDERSON and EDITH ) | No. CV-05-0186-PR |
| ANDERSON; GERALD BREEYEAR and ) | |
| JUDITH BREEYEAR; RICHARD BREHM ) | Court of Appeals |
| and LUCRECIA BREHM; CLIFFORD G. ) | Division One |
| BREKHUS and LAVONNE BREKHUS; ) | No. 1 CA-CV 04-0370 |
| JESSE BRYAN and ELIZABETH BRYAN; ) | |
| HARRY GRAPE; SCOTTY GRIFFIN; ) | La Paz County |
| EDDIE D. HAYNES; JAMES HOLMBERG ) | Superior Court |
| and CAROLYN HOLMBERG; JOHN HONG ) | No. CV2002-0093 |
| and SUZANNE HONG; DAVID JEWELL ) | |
| and KATHLEEN JEWELL; ROBERT ) | **O P I N I O N** |
| KEMBEL and JOANNE KEMBEL; ELDON ) | |
| McDANIEL; CHARLES SCHILDER and ) | |
| ALLENE SCHILDER; RONALD SKITES ) | |
| and MARJORIE A. SKITES; HOWARD ) | |
| SMITH and MARJORIE SMITH; LARRY ) | |
| SULLIVAN and BEVERLY SULLIVAN, ) | |
| ) | |
| Plaintiffs-Appellees, ) | |
| ) | |
| v. ) | |
| ) | |
| THOMAS WASHBURN, individually, ) | |
| and in his capacity as President ) | |
| of K.R.C. COMPANY, an Arizona ) | |
| corporation, and ROSE WASHBURN, ) | |
| his wife; K.R.C. COMPANY, an ) | |
| Arizona corporation; ROBERT M. ) | |
| BUMGARDNER and TERI BUMGARDNER, ) | |
| husband and wife; EARNEST and ) | |
| VERA WRIGHT, husband and wife; ) | |
| JOHN and JEAN NEVILLE, husband ) | |
| and wife; FORREST and JAN ) | |
| PHILLIPS, husband and wife; NEAL ) | |
| FIVECOAT, an unmarried man, ) | |
| ) | |
| Defendants-Appellants. ) | |
| ) | |
| _____) | |

Appeal from the Superior Court in La Paz County
No. CV2002-0093
The Honorable Michael J. Burke, Judge
**AFFIRMED**

Memorandum Decision of the Court of Appeals, Div. One
1 CA-CV 04-0370, Filed April 12, 2005
**VACATED**

_____

LAW OFFICES OF JOHN CHURCHILL                                    Parker
     By    John Churchill

And

LAW OFFICES OF JOHN A. SHANNON, JR.                              Phoenix
     By    John A. Shannon, Jr.
Attorneys for Powell et al.

LAW OFFICES OF ROBERT D. MCCOY                               Wickenburg
     By    Robert D. McCoy
Attorney for Washburn and K.R.C. Company

LAW OFFICES OF KEITH S. KNOCHEL, P.C.               Bullhead City
     By    Keith S. Knochel
Attorney for Wright, Neville, Phillips and Fivecoat

LAW OFFICES OF TOBY ZIMBALIST                                    Phoenix
     By    Toby Zimbalist
Attorney for Amicus Curiae National Institute of Community
Management
_____

**R Y A N**, Justice

¶1      This case requires us to interpret real property restrictive covenants.  One approach has been to construe such covenants narrowly, to favor the free use of land.  We today adopt the approach of the Restatement (Third) of Property: Servitudes ("Restatement") and hold that restrictive covenants should be interpreted to give effect to the intention of the parties as determined from the language of the document in its

- 2 -

entirety and the purpose for which the covenants were created.

**I**

**A**

¶2        In November 1988, Thomas Washburn, President of K.R.C. Corporation, recorded the Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") for Indian Hills Airpark, an aviation-related planned community.  The CC&Rs incorporate, by reference, the La Paz County zoning ordinances.[1]  The document creating the CC&Rs declared that its purpose was to develop the property "as an aviation related residential and commercial center" and that the CC&Rs "are intended to benefit the owners and their successors in interest who hold an ownership interest in all or any portion of the property."

¶3        The Airpark is zoned as a manufactured home subdivision.  At the time the CC&Rs were adopted, the zoning ordinances permitted only three residential uses in such a subdivision:  manufactured homes, low density residential (R-1-6 district),[2] and mobile homes.  La Paz County, Ariz., The Zoning Ordinance Land Use Regulations ("Zoning Ord.") art. VI, § 606.11 (Jan. 1983).  Hangar-houses (homes incorporating an airplane

---

[1]    The relevant portion of the CC&Rs is set forth in the appendix to this opinion.

[2]    An R-1-6 district is a low density residential district with lots having an area of 6,000 square feet and a minimum width of sixty feet.  La Paz County, Ariz., The Zoning Ordinance Land Use Regulations art. VI, § 603.04(d) (Jan. 1983).

- 3 -

hangar) were added to the CC&Rs as a permissible use in 1992. In 1996, La Paz County amended the zoning ordinances to permit the use of recreational vehicles as residences in a manufactured home subdivision. La Paz County, Ariz., Zoning Regulations ("Zoning Reg.") Appendix A, § VI (July 31, 1996); Zoning Reg. art. III, § III-2(F) (as amended Aug. 17, 1998).[3] When the CC&Rs were adopted, the ordinances defined a recreational vehicle as

> [a] vehicular type of dwelling unit thirty-five (35) feet or less in length and eight (8) feet or less in width primarily designed as temporary living quarters for recreational, camping or travel use, which either has its own motive power or is mounted on or drawn by another vehicle.

Zoning Ord. art. II, § 201.63.[4]

**B**

¶4        In August 2002, Edward Powell, along with several other property owners in the Airpark ("Powell"), filed suit in superior court against Thomas Washburn and others ("Washburn") requesting an injunction prohibiting the use of RVs as single

---

[3]        The zoning ordinances in effect when the Airpark was first established were titled "The Zoning Ordinance Land Use Regulations." The current version is titled "Zoning Regulations." We distinguish between the two by citing those in effect at the time of the adoption of the CC&Rs as "Zoning Ord." and citing the current version as "Zoning Reg."

[4]        The current version of the La Paz County zoning regulations has a more expansive definition of a recreational vehicle. *See* Zoning Reg. art. II, § II-2, p. II-9. Nevertheless, the thrust of the regulation still is aimed at "temporary living quarters." *Id*.

family residences within the Airpark. The parties filed cross-motions for partial summary judgment. The trial court granted Powell's motion, finding that the CC&Rs did not permit the use of RVs as residences.

¶5 Washburn appealed, arguing that the trial court erred by not interpreting the restrictive covenants strictly in favor of the free use of land. In a memorandum decision, the court of appeals agreed, and reversed and remanded.

¶6 Powell petitioned for review, arguing that rules of contract construction, such as giving effect to all portions of the contract and enforcing the intent of the parties, supersede any policy in favor of strict construction of restrictive covenants. Powell also argues that changes in social policy toward equitable servitudes suggest abandoning the policy favoring strict construction and free use of land and adopting the Restatement rule, which requires giving effect to the intent of the parties. He contends that under the Restatement approach the CC&Rs forbid the use of RVs as residences in the Airpark.

¶7 We accepted review because of the widespread use of restrictive covenants in planned communities and the accompanying need for a clear statement of how to interpret such covenants. We have jurisdiction under Article 6, Section 5(3), of the Arizona Constitution, Arizona Revised Statutes ("A.R.S.") section 12-120.24 (2003), and Arizona Rule of Civil Appellate

- 5 -

Procedure ("ARCAP") 23.

II

¶8      A deed containing a restrictive covenant that runs with the land is a contract.  *Ahwatukee Custom Estates Mgmt. Ass'n v. Turner*, 196 Ariz. 631, 634, ¶ 5, 2 P.3d 1276, 1279 (App. 2000); *Ariz. Biltmore Estates Ass'n v. Tezak*, 177 Ariz. 447, 448, 868 P.2d 1030, 1031 (App. 1993).  The interpretation of a contract is generally a matter of law.  *Hadley v. Sw. Props., Inc.*, 116 Ariz. 503, 506, 570 P.2d 190, 193 (1977); *Biltmore Estates*, 177 Ariz. at 448, 868 P.2d at 1031.  At oral argument, the parties agreed there were no disputed facts concerning the creation of the CC&Rs or the meaning of the language used in the document; therefore, our review is *de novo*. *See Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).

A

¶9      In Arizona, the traditional rule has been that when a restrictive covenant is unambiguous, it is enforced so as to give effect to the intent of the parties.  *Biltmore Estates*, 177 Ariz. at 449, 868 P.2d at 1032 ("[T]he cardinal principle in construing restrictive covenants is that the intention of the parties to the instrument is paramount.") (citing *Riley v. Stoves*, 22 Ariz. App. 223, 225-26, 526 P.2d 747, 749-50 (1974)); *Sky Mountain Ranch Subdiv. Prop. Owners Ass'n v. Williams*, 12

- 6 -

Ariz. App. 244, 246, 469 P.2d 478, 480 (1970) ("'[T]he intent of the parties and the object of the deed or restriction should govern, giving the instrument a just and fair interpretation.'") (quoting *R & R Realty Co. v. Weinstein*, 4 Ariz. App. 517, 522 n.2, 422 P.2d 148, 153 n.2 (1966)).

¶10    Arizona's rule that courts should enforce the intent of the parties to a restrictive covenant in the absence of ambiguity reaches back to the 1930s.  In *Ainsworth v. Elder*, this Court adopted an intent-based analysis (without calling it such) when it stated that "courts should consider not only the strict and technical meaning of the particular words of restriction, but also the surrounding circumstances, the general purpose of the restrictions, and the manner in which they have been interpreted by the property owners."  40 Ariz. 71, 74-75, 9 P.2d 1007, 1008 (1932).

¶11    This general principle of looking beyond the mere words of a restrictive covenant to the surrounding circumstances and the general purpose of the restriction has been repeated in subsequent decisions.  *See, e.g.*, *Duffy v. Sunburst Farms E. Mut. Water & Agric. Co.,* 124 Ariz. 413, 416, 604 P.2d 1124, 1127 (1979) ("This court has previously recognized that in determining the meaning of restrictive covenants, the surrounding circumstances will be looked to as well as the meaning of particular words.") (citations omitted); *Whitaker v.*

- 7 -

*Holmes*, 74 Ariz. 30, 32, 243 P.2d 462, 463 (1952) (stating that when interpreting restrictive covenants "the courts not only look to the meaning of the particular words but also to other surrounding circumstances") (citation omitted).

¶12    Arizona decisions, however, have also posited a countervailing principle of interpreting restrictive covenants when a court perceives that a restrictive covenant is ambiguous or does not expressly prohibit a particular use of the property. A number of opinions state that a court must strictly construe the terms of the restrictive covenant in favor of the free use of land and against the restriction.  *See, e.g., Duffy*, 124 Ariz. at 417, 604 P.2d at 1128; *Burke v. Voicestream Wireless Corp. II*, 207 Ariz. 393, 396, ¶ 13, 87 P.3d 81, 84, (App. 2004) (stating that "[i]f the language of a restrictive covenant is judged to be ambiguous, it should be construed in favor of the free use of the land") (citing *Duffy*, 124 Ariz. at 417, 604 P.2d at 1128); *Grossman v. Hatley*, 21 Ariz. App. 581, 583, 522 P.2d 46, 48 (1974) ("Restrictive covenants are to be strictly construed against persons seeking to enforce them and any ambiguities or doubts as to their effect should be resolved in favor of the free use and enjoyment of the property and against restrictions.") (citations omitted).

¶13    Because a restrictive covenant is a contract, *Ahwatukee Custom Estates Mgmt. Ass'n*, 196 Ariz. at 634, ¶ 5, 2

P.3d at 1279, the doctrine of strict construction has been criticized as being too restrictive. *See* Restatement § 4.1 cmt. a (2000). Rather, "the function of the law is to ascertain and give effect to the likely intentions and legitimate expectations of the parties who create servitudes, as it does with respect to other contractual arrangements." Restatement, Introductory Note to ch. 4, at 494 (2000); *see also Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 153, 854 P.2d 1134, 1139 (1993) ("When interpreting a contract . . . it is fundamental that a court attempt to 'ascertain and give effect to the intention of the parties at the time the contract was made if at all possible.'") (quoting *Polk v. Koerner*, 111 Ariz. 493, 495, 533 P.2d 660, 662 (1975)). To this end, the Restatement recommends that

> [a] servitude should be interpreted to give
> effect to the intention of the parties
> ascertained from the language used in the
> instrument, or the circumstances surrounding
> creation of the servitude, and to carry out
> the purpose for which it was created.

Restatement § 4.1(1). Although the Restatement rule "departs from the often expressed view that servitudes should be narrowly construed to favor the free use of land[,] [i]t is based in the recognition that servitudes are widely used in modern land development and ordinarily play a valuable role in utilization of land resources." Restatement § 4.1 cmt. a.

¶14     We adopt the Restatement approach for interpreting restrictive covenants for three reasons.  First, § 4.1 of the Restatement is consistent with long-standing Arizona case law holding that enforcing the intent of the parties is the "cardinal principle" in interpreting restrictive covenants. *Biltmore Estates*, 177 Ariz. at 449, 868 P.2d at 1032; *see also Whitaker*, 74 Ariz. at 32, 243 P.2d at 463; *O'Malley v. Cent. Methodist Church*, 67 Ariz. 245, 247, 254-55, 194 P.2d 444, 446, 451 (1948) (holding that the intent of the parties, in light of the terms of the deeds and the surrounding circumstances, is central to determining both whether there is a general plan and the meaning of the restrictions contained in the deed); *Ainsworth*, 40 Ariz. at 74-75, 9 P.2d at 1008.

¶15     Second, although Arizona decisions have referred to the policy of construing restrictive covenants strictly and in favor of free use of land, these references have occurred exclusively in dicta.  *See, e.g.*, *Duffy*, 124 Ariz. at 417, 604 P.2d at 1128 (upholding the clear and unambiguous terms of the CC&Rs pertaining to the procedure to amend CC&Rs, even though stating that "when the language of a restrictive covenant is unclear, it should be construed in favor of the free use of land"); *Burke*, 207 Ariz. at 396-97, ¶¶ 13, 18, 87 P.3d at 84-85

(to same effect); *Biltmore Estates*, 177 Ariz. at 449-50, 868 P.2d at 1032-33 (to same effect); *Carter v. Conroy*, 25 Ariz. App. 434, 436, 544 P.2d 258, 260 (1976) (to same effect); *Grossman*, 21 Ariz. App. at 583, 585, 522 P.2d at 48, 50 (to same effect); *R & R Realty Co.*, 4 Ariz. App. at 526-27, 422 P.2d at 157-58 (to same effect).

¶16     Third, the Restatement's approach mirrors the contemporary judicial trend of recognizing the benefits of restrictive covenants. *See, e.g.*, *Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Assocs.*, 867 P.2d 70, 75 (Colo. Ct. App. 1993) ("Restrictive covenants must be construed as a whole and interpreted in view of their underlying purposes, giving effect to all provisions contained therein."); *Markey v. Wolf*, 607 A.2d 82, 88-93 (Md. Ct. Spec. App. 1992) (tracing evolution of rule from strict construction to reasonable construction to give effect to purpose of restrictive covenants); *Griffin v. Tall Timbers Dev., Inc.*, 681 So. 2d 546, 551 (Miss. 1996) ("In construing covenants imposing restrictions and burdens on use of land, the language used will be read in its ordinary sense, and the restriction and burden will be construed in light of the circumstances surrounding its formulation, with the idea of carrying out its object, purpose and intent, and the restrictions and burdens should be fairly and reasonably interpreted according to their apparent

- 11 -

purpose.") (citation omitted); *Joslin v. Pine River Dev. Corp.*, 367 A.2d 599, 601 (N.H. 1976) ("The former prejudice against restrictive covenants which led courts to strictly construe them is yielding to a gradual recognition that they are valuable land use planning devices.") (citation omitted); *Riss v. Angel*, 934 P.2d 669, 676 (Wash. 1997) ("'While restrictive covenants were once disfavored by the courts, upholding the common law right of free use of privately owned land, modern courts have recognized the necessity of enforcing such restrictions to protect the public and private property owners from the increased pressures of urbanization.'") (quoting *Lakes at Mercer Island Homeowners Ass'n v. Witrak*, 810 P.2d 27, 28 (Wash. Ct. App. 1991)); *Wallace v. St. Clair*, 127 S.E.2d 742, 751 (W. Va. 1962) ("Covenants . . . are designed to be for the benefit of every lot or parcel of land in the area affected by the restriction. Each lot or parcel is not merely burdened by a restriction but it is also clothed with the benefit which is enforceable against every other lot or parcel. The burdens and benefits are reciprocal. The reasons for the rule of strict construction do not obtain with full force in such a situation.").

## III

¶17    In this case, the court of appeals did not find the relevant portion of the restrictive covenants ambiguous. The court concluded, however, that because the covenants did not

expressly prohibit RVs as single family residences, when La Paz County amended its zoning ordinance to permit the use of RVs as single family residences in a manufactured home subdivision, RVs became a permitted single family residence in the Airpark. Citing *Duffy*, the court also stated that "if there is any 'wiggle' in determining the intended meaning of a restrictive covenant, the outcome should favor free use of the property. When a set of covenants does not expressly restrict a particular use . . . a restriction by implication will not advance the free use of property." (Citation omitted.)

¶18    Applying the principles of the Restatement, we conclude that although the CC&Rs neither expressly prohibit nor permit RVs as residences, the plain intent and purpose of the restrictions was to limit residences in the Airpark to mobile or manufactured homes, constructed homes, or hangar-homes. We base this conclusion on the language used in the CC&Rs and the purpose for which the restrictions were created.

**A**

¶19    The language of the CC&Rs evidences an intent to limit the type of single family residences permitted in the Airpark in several ways. First, the strict controls the CC&Rs impose on the listed types of residences and the failure to specify any controls over any other type of residence lead to the conclusion that the parties to the CC&Rs intended to prohibit any type of

residence not explicitly listed in the CC&Rs.

¶20    Section two of the CC&Rs includes a list of the permissible residential uses of the property.  *See* Appendix.  In this section, the CC&Rs list only three types of single family residences as a permitted use: mobile homes,[5] constructed homes, and hangar-houses.  For each type of residence listed, the CC&Rs provide specific and detailed limits to the size and appearance of the residence.

¶21    Mobile homes must be twenty feet or greater in width, have at least twelve hundred square feet of living space, be no more than one year old, and be on a permanent foundation.  They must have exteriors of fir, exterior plywood, painted hardboard, lapsiding, or stucco.  Their roofs must be tile, cedar, shake, or composition.  Similarly, constructed homes must have at least

---

[5]    When the CC&Rs were adopted, the ordinances defined a mobile home as

> A movable or portable dwelling unit over thirty-five (35) feet in length or over eight (8) feet wide, constructed to be towed on its own chassis and designed so as to be installed with or without a permanent foundation for human occupancy as a residence which may include one or more components that can be retracted for towing purposes and subsequently expanded for additional capacity, or two or more units separately towable but designed to be joined into one integral unit, as well as a portable dwelling composed of a single unit, *except that it does not include recreational vehicle as defined herein*.  For the purposes of these regulations a mobile home is not considered to be a house.

Zoning Ord. art. II, § 201.54 (emphasis added).

twelve hundred square feet of living space and be compatible with the mobile homes and other structures in the subdivision. Further, all plans for constructed homes are subject to prior approval of the Architectural Committee. A hangar-house must include a hangar at least forty feet wide and thirty feet deep and contain eight hundred square feet of living space, all under the same roof. Finally, hangar-houses are also subject to prior approval of the Architectural Committee.

¶22    The CC&Rs contain no catch-all language stating that other types of residences must conform to the appearance of the listed residences in the Airpark or that they are subject to approval by the Architectural Committee. Thus, if other types of residences were to be permitted under the CC&Rs, they could have an appearance and quality completely at odds with that required by the CC&Rs for mobile homes, constructed homes, and hangar residences. It is quite unlikely that the parties to the CC&Rs, having carefully specified how certain types of expressly permitted residences must be configured, would allow all other types of residences with no requirements whatsoever.

**B**

¶23    Second, the CC&Rs require that each of the three types of explicitly listed residences has a hangar. For example, mobile homes and constructed homes must have a hangar within one year of placement of the home on the lot. And hangars are

integral parts of hangar-houses.  If residences other than those described in the CC&Rs are permitted, apparently those homes need not include a hangar, as no other provision in the CC&Rs requires any non-specified type of residence have a hangar.

¶24        Thus, under the kind of literal construction of the CC&Rs adopted by the court of appeals, other types of residences, such as RVs, would not be required to have a hangar. Such an interpretation would be clearly at odds with the CC&Rs' stated purpose: "[T]o develop the property as *an aviation related residential and commercial center . . . ."*  (Emphasis added.)

C

¶25        Third, the CC&Rs state that when they are consistent with, but are more restrictive than, applicable law, the CC&Rs will apply to the property.[6]  Thus the fact that the zoning ordinances - applicable law – have been amended to permit RVs to be used as a residence in a manufactured home subdivision does not determine the ultimate permitted use under the CC&Rs.  Given our conclusion that the intent and purpose of the CC&Rs is to preclude the use of RVs and other non-listed "residences" in the

---

[6]    Section 20 of the CC&Rs states, in part, the following:

> In the event any provision of this Declaration is consistent with, but more restrictive than, Applicable Law, such privision [sic] of this Declaration shall apply to the Property.

- 16 -

Airpark, the amendment to the zoning law providing for less restrictions does not control.

**D**

¶26     An illustration in the Restatement explains the point:

> Deed restrictions in Sandy Acres, a 200-lot subdivision originally developed with single-family homes, prohibit "apartment houses." A developer who has acquired 10 contiguous lots plans to construct a 10-story condominium complex on the property. Condominiums were unknown in the jurisdiction when the restriction was created. The restriction should be interpreted to prohibit the proposed condominium complex because it presents density problems similar to those created by apartment houses. The servitude will not serve its purpose if interpreted literally.

Restatement § 4.1 cmt. i, illus. 5.

¶27     Here, the CC&Rs likewise only envisaged certain types of residences. Although section 2 does refer to possible amendments to the La Paz County zoning ordinances, that clause must be read in conjunction with the CC&Rs in their entirety. Specifically, section 2 also provides that "the use and improvement of the Property shall be in accordance with the covenants, conditions and restrictions herein set forth . . . ." The subsequent restrictions plainly intend that only mobile homes, constructed homes, and hangar-houses be used as residences in the Airpark. None of the restrictions applicable to such residences could be reasonably applied to RVs as they

- 17 -

are defined by the La Paz County zoning ordinance or regulation. *See* Zoning Ord. art. II, § 201.63; Zoning Reg. art. II, § II-2, p. II-9. Thus, the amendment to the zoning ordinances permitting RVs to be used as single family residences in a manufactured home subdivision does not serve the CC&Rs' intent to have the Airpark development possess a particular appearance and quality.

¶28 Accordingly, the court of appeals erred in concluding that because "section 2 unambiguously omits any mention of RVs," the amendment to the zoning ordinances left "the door open to the use of an RV" in the Airpark if it is used as a single family residence. Such a conclusion is contrary to the intent and the purpose of the CC&Rs.

**IV**

¶29 Citing A.R.S. § 12-341.01 (2003), Powell requests an award of attorneys' fees. Because Powell presented the request for the first time in his supplemental brief, we deny the request. *See* ARCAP 21(c) ("If a petition . . . for review is filed, a request for allowance of attorneys' fees shall be made in the petition . . . ."); *see also Wagenseller v. Scottsdale Mem'l Hosp.*, 147 Ariz. 370, 391, 710 P.2d 1025, 1046 (1985) (holding that "to be timely under Rule 21(c) on petitions for review by this court, the request for attorney's fees must be made either in the petition for review, the response thereto or

- 18 -

by separate written motion filed and served prior to oral argument") (*superseded by statute on other grounds*).

## V

¶**30** For the foregoing reasons, we vacate the decision of the court of appeals and affirm the trial court's judgment.


_____
Michael D. Ryan, Justice


CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Andrew D. Hurwitz, Justice


_____
W. Scott Bales, Justice

2. <u>USE OF PROPERTY</u>: Except as otherwise set forth herein, the use and improvement of the Property shall be in accordance with covenants, conditions and restrictions herein set forth, in accordance with applicable governmental law, including without limitation, the zoning ordinances of the County of La Paz, the Rules and Regulations of the FEDERAL AVIATION AUTHORITY as they may be amended or expanded from time to time.

A. Lots 1 through 77 shall be single family residential lots and subject to the following additional restrictions:

(1) No mobile home shall be less than 20 feet in width, no more than one year old at the time of placement on the lot.

(2) No mobile home shall be less than 1,200 square feet of living space.

(3) All mobile homes moved onto a lot in this subdivision shall be affixed on a permanent foundation.

(4) All mobile home units are required to have exteriors of fir, exterior plywood, painted hardboard (masonite) or lapsiding or stucco.

(5) All mobile homes are required to have tile, cedar, shake or composition roofs.

(6) Within one year after placement of mobile home on the lot the owner shall cause to be constructed on the lot a hangar 40 feet wide by 30 feet deep, to be approved by the Architectural Committee.

(7) Any constructed home placed on any lot within this subdivision shall have a minimum square footage of 1,200 and be compatible with the mobile himes [sic] or other structures in the subdivision. All plans are subject to prior approval of the Architectural Committee.

(8) Within one year after placement of constructed home on the lot the owner shall cause to be constructed on the lot a hangar 40 feet wide by 30 feet deep, to be approved by the Architectural COmmittee [sic].

(9)  No hangar shall be less than 40 feet wide by 30 feet deep and are subject to prior approval of the Architectural Committee.

(10) A HANGAR-HOUSE shall be a minimum of 40 feet wide by 30 feet deep of hangar space and a minimum of 800 square feet of living space, all to be included under one roof, to be approved by the Architectural Committee.

B.  Lots A1 through A6 and Lots B1 through B11 shall be Commercial lots and shall be subject to La Paz County Zoning Ordinances and all terms and conditions of this Declaration except those provisions outlined in numerical paragraph 2 A.(1) through (11) hereinabove.