IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

**STAKER & PARSON COMPANIES, INC.**,
*Plaintiff,*

*v.*

**SCOTTSDALE INSURANCE COMPANY**,
*Defendant.*

No. CV-21-0256-CQ
July 10, 2024

Certified Questions from the
United States District Court for the District of Utah
The Honorable David Nuffer, Judge
No. 4:18-cv-00014-DN-PK
**QUESTIONS ANSWERED**

COUNSEL:

Timothy J. Berg (argued), Tyler D. Carlton, Fennemore Craig, P.C., Phoenix; Rebecca L. Hill, and George W. Burbidge, II, Christensen & Jensen, P.C., Salt Lake City, UT, Attorneys for Staker & Parson Companies, Inc.

Timothy J. Curtis (argued), Goebel Anderson PC, Salt Lake City, UT, Attorneys for Scottsdale Insurance Company

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BRUTINEL, BOLICK, MONTGOMERY, and KING joined.

───────────────

JUSTICE BEENE, Opinion of the Court:

¶1        The United States District Court for the District of Utah certified four questions to this Court:

> 1.        Under Arizona law, is an additionally named insured on a commercial automobile liability insurance policy "using" an independent contractor's covered vehicle when that vehicle is being operated by an employee of the independent contractor to transport the additionally named insured's cargo and the additionally named insured does not have active or actual control over the vehicle's operation or the independent contractor's employee?
>
> 2.        Under Arizona law, is an additionally named insured on a commercial automobile liability insurance policy "using" an independent contractor's covered vehicle when that vehicle is being operated by an employee of the independent contractor to transport the additionally named insured's cargo over private roads that are owned and maintained by the additionally named insured, regardless of whether the additionally named insured has active or actual control over the vehicle's operations of the independent contractor's employee?
>
> 3.        Under Arizona law, can the managerial functions of an additionally named insured on a commercial automobile liability insurance policy, such as establishing safety training procedures for independent contractors operating vehicles on the additionally named insured's property, constitute a "use" of an independent contractor's covered vehicle?
>
> 4.        If the answer to any of Questions (1) through (3) above is "yes," under Arizona law, is there a sufficient causal link

2

between the additionally named insured's "use" of the covered vehicle and theories of liability for personal injuries sustained by the independent contractor's employee to trigger an insurer's duty to defend the additionally named insured when the employee stopped and exited the vehicle and was injured when attempting to dislodge an obstruction that became lodged in the vehicle's dual tires while it was being operated on the additionally named insured's private roads?

¶2        We accepted all four questions, which we now answer.

## BACKGROUND

¶3        These certified questions arise from an accident that occurred at the Ina Pit Mine in Pima, Arizona, operated at the time by Staker & Parson Companies ("Staker"). Staker had entered into a Haul and Materials Agreement ("Haul Agreement") with BDR Transport ("BDR"), which was tasked with transporting rock materials between processing areas located within the Ina Pit Mine site. Under the Haul Agreement, BDR was required to procure certain insurance coverages and name Staker as an additional insured.

¶4        The accident involved William Baughn, a BDR employee. Baughn hauled rock at the Ina Pit Mine in a BDR tractor and trailer. As Baughn was driving on the Ina Pit Road, a rock became lodged between the trailer's dual set of tires. Once parked, Baughn noticed the lodged rock and attempted to dislodge it using a hammer. The tires exploded, seriously injuring him.

¶5        Baughn sued Staker, BDR, and certain agents of those entities. As relevant here, Baughn alleged that Staker was negligent under three theories: (1) improper loading of Baughn's trailer with rock and dirt; (2) improper maintenance of the Ina Pit Road on which Baughn traveled; and (3) failure to devise and implement safety training and techniques. Staker tendered its defense to Scottsdale Insurance Company ("SIC"). SIC had issued a commercial automobile policy to BDR in accordance with the Haul Agreement, naming Staker as an additional insured. But SIC denied coverage, asserting Staker did not qualify as an insured under the policy because it was not using the vehicle at the time of the accident.

3

¶6 Staker provided for its own defense in the lawsuit. Upon the conclusion of the Baughn litigation, Staker sued SIC seeking a determination of SIC's obligation to provide and pay for Staker's defense.[1] Staker's complaint against SIC was filed in a Utah state court but was subsequently removed to the United States District Court for the District of Utah. We have jurisdiction under article 6, section 5(6) of the Arizona Constitution and A.R.S. § 12-1861.

## DISCUSSION

¶7 We review statutory terms and questions of law de novo. *Cao v. PFP Dorsey Invs.*, 545 P.3d 459, 463 ¶ 15 (Ariz. 2024). Though we generally interpret contracts de novo, *Powell v. Washburn*, 211 Ariz. 553, 555–56 ¶ 8 (2006), we are not asked to interpret the parties' policies. Rather, the certified questions here refer only to Arizona law. We therefore do not address the district court's rulings regarding how the SIC policy applies to the underlying facts, including its ruling that the SIC policy's "Movement of Property by Mechanical Device" clause excluded coverage for Baughn's claims that Staker negligently loaded the truck prior to the accident.

## I.

¶8 We answer the first certified question in the affirmative. Arizona law generally provides that "loading and unloading" a vehicle constitutes "use" of that vehicle under Arizona automobile insurance policies. *See Mission Ins. v. Aid Ins. Servs.*, 120 Ariz. 220, 221–22 (1978). Furthermore, "loading and unloading" is a continuous process that necessarily encompasses transporting cargo between loading and unloading it. *See id.* at 222; *see also Farmers Ins. of Ariz. v. Till*, 170 Ariz. 429, 431–32 (App. 1991).

¶9 Arizona's omnibus insurance coverage statute—A.R.S. § 28-4009(A)(2)—requires that all motor vehicle liability policies

---

[1] Staker's claim seeking indemnification of the judgment from SIC became moot after the court of appeals reversed the jury verdict against Staker. *See Baughn v. Staker & Parson Cos.*, No. 2 CA-CV 2017-0209, 2018 WL 5249968, at *7 ¶ 30 (Ariz. App. Oct. 22, 2018).

> insure the person named in the policy as the insured and any
> other person, as insured, using the motor vehicle or motor
> vehicles with the express or implied permission of the named
> insured against loss from the liability imposed by law for
> damages arising out of the ownership, maintenance *or use of*
> *the motor vehicle or motor vehicles*.

(Emphasis added.) The first question here requires us to define "use of the motor vehicle" as used in the statute.

**¶10**        We have previously interpreted the word "use" in this context to include "loading and unloading." In *Mission Insurance*, we found the term "use of a motor vehicle" to include "the concept of loading and unloading." 120 Ariz. at 221–22. There, we noted that "'unloading' is regarded as embracing all the operations which are required in any specific situation to effect a completed delivery of the article." *Id.* at 222 (quoting *Cal. Steel Bldgs., Inc. v. Transp. Indem. Co.*, 51 Cal. Rptr. 797, 801 (Dist. Ct. App. 1966)). More recently, our court of appeals noted that courts "have concluded that 'use' continues from the commencement of loading through the unloading process." *Till*, 170 Ariz. at 431–32.

**¶11**        Based on our omnibus insurance coverage statute and consistent with our caselaw, we conclude that "use" of a motor vehicle includes "loading and unloading." We further conclude that "loading and unloading" is a continuous process which includes the transportation of the cargo being loaded and unloaded.

**¶12**        We also take this opportunity to clarify that the definition of "use" is not confined to either control *or* the loading and unloading process. Instead, we find that "use" of an insured vehicle is a broad concept. *See Odom v. Farmers Ins. of Ariz.*, 216 Ariz. 530, 536 ¶ 22 (App. 2007) (collecting dictionary definitions to support the proposition that "[a] person 'uses' an object when he or she is *actually doing something* with it at the time in question" (emphasis added)); *see also Westfield Ins. v. Aetna Life & Cas. Co.*, 153 Ariz. 564, 568 (App. 1987) (collecting authorities to conclude that "use" includes a broad range of activity involving the utilization of the covered vehicle as intended or contemplated by the insured).

**¶13**        Consistent with existing Arizona caselaw, we define "use" as the permissive user taking some action that involves the inherent nature of

the particular vehicle, like driving, loading or unloading, fueling, or otherwise utilizing the vehicle as intended. *See, e.g.*, *Tobel v. Travelers Ins.*, 195 Ariz. 363, 368–69 ¶¶ 28–32 (App. 1999) (holding that "use" includes using a parked work truck's flashing warning lights to warn drivers that worker was moving barricades from the roadside, where truck was insured as barricade company's work vehicle); *Westfield Ins.*, 153 Ariz. at 568 (holding that tow-truck operator was "using" the covered vehicle that he was towing); *Till*, 170 Ariz. at 431–32 (finding "use" of a vehicle where dog broke through living quarters of a truck and bit a passenger sitting in the cab, reasoning the dog was being transported by the covered truck).

¶14 This definition is consistent with our interpretation of "use" as a broad term, as well as the principle that "use" cannot be extended beyond the scope of the insured purpose. *See State Farm Mut. Auto. Ins. v. Loesl*, 194 Ariz. 40, 44 ¶ 20 (App. 1999) ("Insurers should not be responsible for liability coverage that is far beyond what the parties to the policy intended."). Furthermore, this definition conforms with the notion that automobile policies are not to be treated as general liability policies. *See id.* ("[P]arties to an automobile liability policy do not, and should not, contemplate that the policy is a general liability insurance contract."); *see, e.g.*, *id.* (holding that a named insured had not "used" his vehicle negligently by driving an inebriated passenger to a *different* vehicle).

¶15 In short, we conclude that "use" of a motor vehicle encompasses any purpose for which the vehicle was intended, but the term cannot extend beyond the scope of the insured purpose. Accordingly, we answer the first certified question in the affirmative because "use" includes loading and unloading an additionally named insured's cargo, and such loading and unloading does not require the additionally named insured's "active or actual control over the vehicle's operation."

**II.**

¶16 We answer the second certified question in the negative. "Use" of a covered vehicle does not arise independently from the injured party's use of a vehicle over "private roads that are owned and maintained by the additionally named insured."

¶17 In his lawsuit, Baughn alleged that "Staker had a duty to maintain reasonably safe mine road and dump site conditions which would

include routine clearance of matter to prevent or minimize the likelihood of rocks from interfering with the safe operation of truck tires." Baughn also alleged that at the time of the accident, "there were inadequately maintained conditions at the Ina Pit [R]oad which allowed trailer tires to pick up rocks which had not been cleared by sufficient road maintenance." These allegations support a theory of negligence for failing to maintain reasonably safe premises. *See Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 267 ¶ 9 (2021). Baughn's theory of negligence based on Staker's maintenance of the Ina Pit Road, however, did not arise from the ownership, maintenance, or "use" of a covered vehicle.

¶18 As explained above, "use," though broadly defined, still must relate to the operation of the covered vehicle. *See Loesl*, 194 Ariz. at 42–43 ¶ 14; *Odom*, 216 Ariz. at 536 ¶ 22; Part I ¶¶ 13–14. Although transporting the cargo owned by an additionally named insured can constitute "use," driving on the additionally named insured's roads, by itself, does not constitute "use" of a covered automobile for which the insurer is required to defend under the policy. Arizona's definition of "use" is not so expansive that it encompasses everything touching upon the insured vehicle and the associated lawsuit.

¶19 Moreover, it is difficult to reconcile the word "use" with a failure to maintain premises. A failure to maintain requires a plaintiff to prove the defendant *did not* do something, i.e., the defendant *did not* properly maintain its premises. "Use," on the other hand, requires "actually doing something" with the insured vehicle. *See Odom*, 216 Ariz. at 536 ¶ 22. "Actually doing something" with a vehicle is at odds with an allegation of *not* doing something with the land upon which a vehicle is used. *See id.* It would be incongruous to conclude that Baughn's theory of negligence based on Staker's alleged failure to maintain premises would constitute a "use" of the insured vehicle. Accordingly, we answer the second certified question in the negative.

### III.

¶20 We also answer the third certified question in the negative. "Managerial functions of an additionally named insured on a commercial automobile policy" do not constitute "use" of a covered vehicle.

¶21 In his complaint, Baughn alleged that he received inadequate training from both Staker and BDR with respect to how to deal with a rock becoming lodged between the dual tires. In the duty to defend action, SIC points out that "Staker does not explain how its alleged failure to provide adequate safety training is in any way causally related to its alleged 'use' of BDR's vehicle." SIC also points out that Staker "has not cited to any case (nor has [SIC] found a case) that extends the definition of 'using' a vehicle to include allegations related [to] a putative insured's supervisory or managerial functions regarding safety training." Conversely, in explaining how Baughn's allegations gave rise to SIC's duty to defend, Staker relates managerial functions to "use" of a vehicle by explaining that "[t]he alleged failure of Staker in providing safety training to Baughn concerns its utilization of the covered vehicles as intended and contemplated by BDR and Staker."

¶22 Unlike "use" with respect to the transportation of cargo, our caselaw has not extended the word "use" to include exclusively managerial functions. Because neither the statutory text itself, *see* § 28-4009(A)(2), nor our caselaw enlightens us, we must look to the legislative goals, social policies, and the transaction as a whole, including the reasonable expectations of the insured. *See State Farm Mut. Auto. Ins. v. Wilson*, 162 Ariz. 251, 258 (1989). Here, an examination of those factors leads us to conclude that "managerial functions of an additionally named insured on a commercial automobile policy" do not constitute "use" of a covered vehicle.

¶23 The legislative purpose of our omnibus insurance coverage statute is "to prevent persons injured by the use of a motor vehicle, whether in highway driving or otherwise, from being left uncompensated because of restrictive clauses in the policy insuring the vehicle." *Mission Ins.*, 120 Ariz. at 222. In that light, we consider whether discounting "managerial functions" from the term "use" would leave injured persons uncompensated.

¶24 Here, Baughn was not left uncompensated when SIC did not defend Staker from Baughn's failure to supervise and train claim. Though Staker was found not-negligent as to Baughn on appeal regarding this claim, BDR was found 15% at fault, and it does not appear that BDR contested its liability or refused to pay this portion of Baughn's damages.

¶25     Moreover, and critically, Baughn was not precluded from *claiming* that he received inadequate training from Staker and BDR. Indeed, Baughn alleged and pursued such a claim. But he did not marshal sufficient evidence to support this theory of liability. Baughn's failure, therefore, turned on the factual insufficiency of his claim—and not on the legal effect of the SIC policy terms. In short, our interpretation of the word "use" here would not prevent Baughn from seeking compensation under an inadequate-training theory and, thus, is not so restrictive as to leave injured persons uncompensated.

¶26     SIC also points out the adverse policy implications if alleged managerial failings were to constitute "use" of a vehicle. SIC argues that if Staker's lack of training constitutes "use," an insurance company's duty to defend would be implicated anytime a company finds a managerial oversight that is, at most, distantly related to an automobile accident. The implication would be that "[c]ompanies like Staker will have no incentive to adequately maintain their premises or address worksite safety because any financial liability would fall on their subcontractor's insurers thus removing any financial incentive to avoid negligence."

¶27     We agree. There is no compelling reason to shift the burden of employee and contractor training onto a subcontractor's *automobile* insurer when negligent training is alleged. Allowing such a shift would mean Staker would be disincentivized to address worksite safety because BDR's insurer would be liable for any accidents that occur on the premises no matter how tenuously linked to the covered vehicle. In the insurance context, "use" of an automobile is not unlimited, and it bears repeating that "[i]nsurers should not be responsible for liability coverage that is far beyond what the parties to the policy intended." *Loesl*, 194 Ariz. at 44 ¶ 20.

¶28     Finally, like with premises liability, it is also difficult to reconcile the word "use" with a claim of failure to train. A failure to train is evidenced by a failure to act, i.e., provide needed training, whereas "use" requires "actually doing something" with the insured vehicle. *See Odom*, 216 Ariz. at 536 ¶ 22. It would be therefore inconsistent to conclude Baughn's theory of negligence based on a failure to train would constitute a "use" of the insured vehicle.

¶29     Accordingly, we answer the third certified question in the negative.

**IV.**

**¶30**         We answer the final certified question by providing the district court with Arizona law on causation in the context of automobile insurance policies.

**¶31**         "[T]here must be a causal relationship between an injury and the ownership, maintenance or use of a motor vehicle." *Ruiz v. Farmers Ins. of Ariz.*, 177 Ariz. 101, 102 (1993). *State Farm Mutual Insurance Co. v. Transport Indemnity Co.*, 109 Ariz. 56 (1973), establishes the causation standard or nexus between "use" of a covered vehicle and an injury. For there to be causation, the use of the covered vehicle does not have to be the proximate cause of the accident. *See id.* at 58. Instead, the accident need only be *connected to* the negligent ownership, maintenance, or use of the covered vehicle. *See id.*; *Ruiz*, 177 Ariz. at 102; *Tobel*, 195 Ariz. at 370.

**¶32**         We do not directly answer whether there was a "sufficient causal link" here. Causation is a question of fact. *Gipson v. Kasey*, 214 Ariz. 141, 147 ¶ 30 (2007). Thus, having set out the standard above, we leave the question of a causal link to the trier of fact. *See id.* at 143 ¶ 9.

**CONCLUSION**

**¶33**         We answer the first certified question in the affirmative, the second and third certified questions in the negative, and the fourth certified question by outlining Arizona law regarding causation in the duty to defend context.